Thomas A. McCLUNG, Plaintiff

v.

WAL–MART, Defendant.

Civ. A. No. 7:93–CV–112–K.

United States District Court,
N.D. Texas,
Wichita Falls Division.

June 24, 1994.

Stephen R. Marsh, Law Office of Stephen R. Marsh, Wichita Falls, TX, for plaintiff.

Anthony M. Kuehler and Charles William Oldham, Oldham & Barnard, Wichita Falls, TX, for defendant.

### MEMORANDUM ORDER GRANTING DEFENDANT'S PARTIAL MOTION TO DISMISS

Belew, District Judge.

Pending before the Court is a Motion to Dismiss filed by the Defendant on April 14, 1994. The Plaintiff filed a Response on April 20, 1994 to which the Defendant filed a Reply on May 4, 1994.

After carefully weighing the parties' arguments, authority and case law, it is the considered opinion of the Court that the Defendant's Motion to Dismiss should be **GRANTED.**

Defendant also asks the Court for sanctions and attorneys fees from both the Plaintiff and his attorney. The Court refuses to enter sanctions against either Plaintiff or his counsel, but does award attorneys fees, to be paid by Plaintiff's counsel, on a finding that the DTPA claims asserted are groundless

and brought in bad faith and to harass the Defendant.

Accordingly, the Court enters this Memorandum Order partially dismissing the Plaintiff's claims.

## I. FACTUAL BACKGROUND

The Plaintiff bought a telephone, and a handset extension cord for the phone, at the Wal–Mart in Wichita Falls, Texas. Defendant's cashier did not de-activate, or remove, the magnetic inventory control security chip attached to the phone. When the Plaintiff left the store, his phone activated security or inventory control alarms.

Wal–Mart employees stopped the Plaintiff in the parking lot and asked him to return to the store. The parties disagree on the amount of force used to return the Plaintiff inside the store. Regardless, this is the conduct giving rise to Plaintiff's claims. While it is unclear from Plaintiff's First Amended Complaint exactly what common law theories of liability he is pursuing, at minimum it appears the Plaintiff is alleging that the Defendant violated Texas' Deceptive Trade Practices Act (DTPA), codified at Tex.Bus. & Com.Code § 17.01, *et seq.* when its employees assaulted and falsely arrested him and then converted his property.

The Defendant argues that the DTPA is not the proper vehicle for Plaintiff's common law claims against it and that those portions of Plaintiff's First Amended Complaint relying on the DTPA fail to state a cause of action for which relief can be granted.

## II. ANALYSIS

The Court must decide whether Plaintiff's First Amended Complaint, as pled, states a cause of action on which relief may be granted. Fed.R.Civ.P. 12(b)(6). If the facts stated therein, taken as true, do not state a cause, the Court must grant the Defendant's Motion.

As stated above, the Plaintiff's Complaint seeks a DTPA remedy for the numerous common law torts allegedly inflicted by the Defendant. Section 17.50(a) provides that

(a) A consumer may maintain a cause of action [under the DTPA] where any of the following constitute a producing cause of the actual damage:

(1) the use or employment by any person of a false, misleading or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this Subchapter;

.    .    .    .    .

(3) any unconscionable act or course of action by any person ...

Tex.Bus. & Com.Code § 17.50 and *see D/FW Commercial Roofing Co., Inc. v. Mehra*, 854 S.W.2d 182, 185–86 (Tex.App.—Dallas 1993).

## A. IS THE PLAINTIFF A DTPA CONSUMER?

■ In order to recover under the DTPA, Plaintiff must establish that he is a consumer under the statute and that his consumption was the producing cause of his injuries. *Rojas v. Wal–Mart*, 857 F.Supp. 533, 535–37 (N.D.Tex); *citing Riverside National Bank v. Lewis*, 603 S.W.2d 169, 173 (Tex.1980). Whether or not a plaintiff is a consumer under the DTPA is a question of law to be determined by the court. *Johnson v. Walker*, 824 S.W.2d 184, 187 (Tex.App.—Fort Worth, 1991, writ denied).

■ The DTPA defines consumer, in relevant part, as: "an individual, ... who seeks or acquires by purchase or lease, any goods or services...." Tex.Bus. & Com.Code § 17.45(4) (West 1987). Texas courts have consistently held that in order to establish consumer status under the DTPA, a plaintiff must show: (1) that he acquired goods or services by purchase or lease, and (2) that the goods or services purchased or leased form the basis of the complaint. *Rojas*, 857 F.Supp. at 536 and *Simon Enter. Inc. v. Lorac Serv. Corp.*, 724 S.W.2d 13 (Tex.1987).

■ Plaintiff attempts to invoke the DTPA's remedies by stating that he was sold a defective telephone, one with the inventory control device still attached. As a result of this defect, he was assaulted by the Defendant. Therefore the defective phone is the "producingly" [sic] cause of his damages. Pl. Resp. to Def.'s Rule 12(b)(6) Mot. at 5.

Plaintiff also alleges that Wal–Mart failed to provide him with numerous services[1] its advertising promised, or the services it provided were defective. First, Plaintiff states that the service of removing or deactivating the inventory control chips was inadequate, or of insufficient quality or expertise, and defective. Second, Plaintiff asserts that Wal–Mart "advertises and promises a superior overall shopping transaction—a superior shopping experience" that it failed to provide because he was assaulted by a Wal–Mart employee and the manager lied to him about rectifying the situation. Third, Plaintiff asserts that "Wal–Mart expressly promises satisfaction with every transaction and a superior level of friendliness" (emphasis in original) which it failed to provide. In regard to this element, Plaintiff asserts that his shopping experience was "such a variance that it is an unconscionable violation of the DTPA."[2] Fourth and finally, the Plaintiff asserts that Wal–Mart failed to provide a quick and fair resolution of his problem to his satisfaction as the company promises.

The DTPA's definition of services is meant to apply to services directly connected to business dealings: services which might enter into a consumer's consideration when buying a good, such as a warranty accompanying a good, or financial counseling in connection with the sale of securities. *See, e.g., Schmueser v. Burkburnett Bank,* 937 F.2d 1025, 1029 (5th Cir.1991).

The "services" that the Plaintiff complains of are not services under the Act. *See* § 17.45(2). Plaintiff has not purchased or leased any work, labor or service from Wal–Mart, he bought a phone and has lodged no complaints with the Court regarding the phone. Plaintiff's claims arise out of post-transaction conduct wholly unrelated to the quality or suitability of the goods he purchased. It would be absurd to allow a DTPA claim to stand on the grounds that the customer did not receive a "superior shopping experience" or because one of the employees was not "friendly" or cheerful. Following

the Plaintiff's logic, a person could sue the neighborhood grocer because a run-away shopping cart dented his car on the grounds that the grocer violated the DTPA by breaching the implied promise to control the shopping carts.

Even if the Court were to distort the statutory definition of services to cover Plaintiff's claims, what the Plaintiff complains of was incidental to, rather than in connection with, his purchase of a telephone and cord from Wal–Mart. *Rojas,* 857 F.Supp. at 537 (claims regarding services incidental to, rather than in connection with, the sale of goods are not cognizable under DTPA).

Accordingly, the Court finds that the Plaintiff lacks consumer standing under the DTPA because first, the goods he purchased do not form the basis of his Complaint, and second because he did not seek or acquire any services on which to base his Complaint.

## B. ARE PLAINTIFF'S COMPLAINTS STATUTORILY ACTIONABLE PRODUCING CAUSES OF HIS INJURIES?

Assuming, *arguendo,* that the Plaintiff is a statutory consumer, the next step in the analysis is to determine whether the actions the Plaintiff complains of are actionable under the DTPA. Section 17.50(a) provides that

(a) A consumer may maintain a cause of action [under the DTPA] where any of the following constitute a producing cause of the actual damage:

(1) the use or employment by any person of a false, misleading or deceptive act or practice that is specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this Subchapter;

.    .    .    .    .

(3) any unconscionable act or course of action by any person ...

---

1. Under the statute, " 'services' means work, labor, or services purchased or leased for use, including services furnished in connection with the sale or repair of goods." DTPA § 17.45(2).

2. Plaintiff refers here to the statutory definition of unconscionable action listed in § 17.45(5) discussed *infra.*

Tex.Bus. & Com.Code § 17.50.[3] Plaintiff must come under one these provisions and prove that the alleged conduct is the producing cause of his damages to maintain his cause.

A producing cause is synonymous with natural result and has been defined as an efficient, exciting or contributing cause that, in a natural sequence, produced the complained of injuries or damages. *MacDonald v. Texaco, Inc.*, 713 S.W.2d 203, 205 (Tex.App.—Corpus Christi 1986, no writ.).

■ Plaintiff never clearly states or defines what elements of § 17.46 he claims Wal–Mart violated in this case. After careful examination of the allegations in Plaintiff's First Amended Complaint, the Court finds that none of § 17.46's elements support Plaintiff's claims. Subsection 9 appears to be closest to supporting Plaintiff: "advertising goods or services with intent not to sell them as advertised." While this generally fits within the broad framework of Plaintiff's "service" theories, the Court finds this to be meritless. Plaintiff does not find support for his claims under § 17.46.

■ Plaintiff also seems to claim that Wal–Mart committed unconscionable acts. An " 'unconscionable action or course of action' means an act or practice which, to a person's detriment: (A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or (B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration." Tex.Bus. & Com.Code § 17.45(5). In short, this remedy is aimed at economic results, not whether the Plaintiff had his arm twisted in the parking lot. *See Sidco Products Marketing, Inc. v. Gulf Oil Corp.*, 858 F.2d 1095, 1101 (5th Cir.1988); *see, also*, W. Dorsaneo, 9 *Texas Litigation Guide* § 220.02[4] at 220–20—22.1. Plaintiff fails to state a cause under this subsection of the Act.

Accordingly, even if the Plaintiff were to be deemed a consumer under the DTPA, he fails to state a cause of action under the broad statutory limits of the Act.

## C. ATTORNEYS FEES

■ The DTPA is meant to protect consumers against false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty and to provide efficient and economical procedures to secure such protection. Tex.Bus. & Com. Code § 17.44; and *see Pope v. Rollins Protective Servs. Co.*, 703 F.2d 197, 201 (5th Cir.1983) and *Jim Walter Homes, Inc. v. Valencia*, 690 S.W.2d 239, 242 (Tex.1985).

■ While the Act is meant to be read broadly, giving aggrieved consumers every opportunity to seek justice, the Act shelters defendants from vexatious and groundless suits by awarding attorneys fees and court costs "on a finding by the court that an action ... was groundless and brought in bad faith, or brought for the purpose of harassment." DTPA § 17.50(c). Therefore, the Court may award a defendant attorneys fees if it finds that the plaintiff's suit is groundless and brought in bad faith, or it finds the suit was brought to harass the defendant.

The trial court is charged with determining whether the suit is groundless and brought in bad faith or to harass. *Donwerth v. Preston II Chrysler–Dodge*, 775 S.W.2d 634, 637 (Tex.1989). Groundless under the DTPA means that the claim has "no basis in law or fact and not warranted by good faith argument for the extension, modification or reversal of existing law." *Donwerth*, 778 S.W.2d at 637. Bad faith under the statute should be given its ordinary meaning—Plaintiff must have acted with malice or discriminatory intent. *Elbaor v. Sanderson*, 817 S.W.2d 826, 829 (Tex.App.—Fort Worth 1991).

■ The Court hereby finds that Plaintiff's DTPA claims in this case are groundless. Plaintiff's inventive use of the term service, discussed *supra*, is not a good faith argument for extension of the express statutory definition of the term. The Court, not only refuses to maintain an action for failure to provide a "superior shopping experience," the Court finds Plaintiff's attempts to create

**3.** The Court has deleted those portions of this   statute not relevant to Plaintiff's case.

a DTPA cause based on these incidental "services" provided by Wal–Mart groundless.

The Court further finds that Plaintiff's attempts to invoke the DTPA by describing the events in the parking lot and the "egregious cover-up"[4] that followed as unconscionable is groundless. Unconscionable is defined in the statute and is limited to economic outcomes associated with commercial transactions. Plaintiff's mere use of the term unconscionable clearly does not invoke the DTPA's consumer protections.

Turning to the question of whether this suit was brought in bad faith, the Court will examine the record in its entirety. A person acts in bad faith when he has knowledge of enough facts and circumstances to know that his or her actions are wrong, and with such knowledge, acts with intentional disregard for the rights of others. *Glasgow v. Hall,* 668 S.W.2d 863, 865 (Tex. App.—Austin 1984, ref. n.r.e.). The clearest evidence of bad faith in bringing this action under DTPA is the same that supports the court's findings that the claims of deceptive trade practices were groundless: that there is no legal or factual basis, at all, to support the Plaintiff's contentions that Wal–Mart deceived him, as a consumer, when its employees allegedly assaulted him in the parking lot. Accordingly, the Court finds that the Plaintiff injected DTPA claims into this common law tort suit in bad faith, hoping that the statutes treble damages and attorney fees provisions would coerce a settlement.

Alternatively, the Court finds that the Plaintiff brought this suit to harass the Defendant on the same grounds listed above.

The Court hereby finds that the Plaintiff's counsel, Stephen R. Marsh, Texas Bar Number 13019700, not the Plaintiff, shall reimburse the Defendant for its reasonable attorneys fees and court costs associated with the preparation and filing of Defendant's April 14, 1994 Motion to Dismiss pursuant to § 17.50(c) of the Tex.Bus. & Com.Code.

The Court requires counsel, and not the Plaintiff personally, to pay these costs for the following reasons. First, the Court holds that except for the DTPA allegations, Plaintiff's First Amended Complaint does state a cause of action on which relief can be granted. Therefore, the Plaintiff has not brought a frivolous suit against the Defendant. Rather, Plaintiff's counsel has improperly pursued Plaintiff's claims.

Second, Fed.R.Civ.P. 11(b) mandates that when an attorney submits a signed Complaint to the Court, the attorney is affirming to the Court that the Complaint is not being submitted to harass the defendant and that the claims contained therein are warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law or establishment of new law. The Court has already held above that the claims that Plaintiff's counsel has asserted on behalf of his client are groundless. While the Court is not awarding any sanctions under Fed.R.Civ.P. 11, it is clear that Plaintiff's counsel, and not the Plaintiff, is responsible for the DTPA portion of the First Amended Complaint.

## III. CONCLUSION

Accordingly, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's claims under the Texas Deceptive Trade Practices Act.

The Court also **GRANTS** the Defendant attorney fees and court costs under the provisions of § 17.50(c) of the DTPA.

The Defendant is hereby ORDERED to submit its requested attorneys fees, with supporting billing records no later than July 8, 1994.

The remainder of Plaintiff's action will be tried during the Court's jury setting the week of July 18, 1994.

IT IS SO ORDERED.

4. Pl.Resp. to Def.'s Mot. to Dismiss at 2.