**Barbara BASS, Plaintiff,**

**v.**

**Harville HENDRIX, IRT Workshop Coordinators, Inc., Norris Chumley, Imago Productions, Inc., and Magnetic Arts, Inc., Defendants.**

**No. H–94–CV–3673.**

United States District Court, S.D. Texas.

July 11, 1996.

Robert E. Lapin, Carrigan, Lapin, Landa & Wilde, L.L.P., Houston, Texas, for Plaintiff.

David N. Noteware, Gregory Meece, Thompson & Knight, Houston, Texas, for Defendants.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

Pending before the court is Defendant IRT Workshop Coordinators, Inc.'s ("IRT") motion for summary judgment (# 26) on all of Plaintiff Barbara Bass's ("Bass") claims.

Having reviewed the motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that IRT's motion for summary judgment should be granted.

## I. *Background*

This lawsuit arises out of the participation of the plaintiff and her former husband, Ian Bass ("Ian"), in a video series based upon the "Getting the Love You Want" workshop, produced by Imago Productions, Inc. ("Imago") and Magnetic Arts, Inc. ("Magnetic Arts"), which are both incorporated in and have their principal places of business in New York. Harville Hendrix ("Hendrix") is the president of Imago, which owns the copyright to the video series, audio cassettes, and printed materials on the "Getting the Love You Want" workshop. Hendrix is also an officer and the sole shareholder of IRT, which trains and educates Imago certified therapists—the instructors who conduct the workshops—and supplies the products and some advertising for the certified therapists and workshops. Norris Chumley ("Chumley") is the president of Magnetic Arts.

On March 7 and 8, 1992, Bass and Ian attended an Imago counseling workshop, "Getting the Love You Want," in New York City. At the workshop, Bass and her husband were chosen to participate in a demonstration exercise. During the workshop, an announcement was made that a video series about Imago relationship therapy was being made and that volunteer couples were being sought to participate. The participants would receive "free therapy" and an honorarium of $500.00 in return for their participation. Bass and Ian indicated that they wished to participate in the project and signed a letter to that effect. According to Bass, she agreed to participate in the video series on the assurances of Chumley that their privacy would be respected and that "[o]nly what you chose to share will be seen." In fact, the participation letter states: "Rest assured that your needs will be respected; your privacy protected. Only what you choose to share will be seen." On March 9, 1992, Bass signed a release consenting to the use of her "name, picture, portrait, and voice" in the "Getting the Love You Want" video/television project. Bass claims that

she signed the release because Chumley told her that she and Ian would have the right, at their discretion, to edit what they did not want included in the series. IRT, on the other hand, maintains that under the terms of the release, Bass never had the right to edit the final version. On March 26, 1992, Chumley, with a film crew, went to the Basses' home in Fairfield, Connecticut. Bass and her husband attended two more filming sessions at the Union Theological Seminary in New York on April 21 and 22, 1992. The final filming session took place at the Basses' home in Connecticut on May 9, 1992. According to Bass, no one connected with the videos series ever contacted her concerning her right to edit the film.

Bass first learned that the video series had been completed when acquaintances told her that they had seen a segment, which included her and Ian, that had aired on the "Oprah Winfrey Show" on January 18, 1993. On January 21, 1993, Ian called Chumley, stating that they had a problem with being included in the series. Hendrix and Chumley met with Ian on January 29, 1993, regarding the Basses' concerns about their appearance in the series. On February 4, 1993, Bass and her husband wrote to Hendrix and Chumley, stating that there were portions of the tapes that they "chose NOT to share." On March 15, 1994, Bass wrote Hendrix, stating that she was withdrawing her consent to the use of her "name, face, voice, etc." in the video series and in any other materials. Although Bass is currently a Texas resident, at that time of the filming of the series, she was a Connecticut resident and did not relocate to Texas until after the completion of the video series and after it had been shown on the "Oprah Winfrey Show."

On September 23, 1994, Bass filed this lawsuit in the 127th Judicial District Court of Harris County, Texas, claiming violations of the Texas Deceptive Trade Practices Act ("DTPA"), breach of the duty of good faith and fair dealing, negligence, gross negligence, breach of contract, attorney's fees under Chapter 38 of the Texas Civil Practice & Remedies Code, and intentional infliction of emotional distress. The defendants removed this action to federal court on October 27, 1994, on the basis of diversity of citizenship. On April 30, 1996, Hendrix, IRT, Chumley, Imago, and Magnetic Arts filed the instant motion for summary judgment. Hendrix, Chumley, Imago, and Magnetic Arts also filed a motion to dismiss for lack of personal jurisdiction, which the court granted on July 5, 1996. IRT, which does not contest this court's personal jurisdiction over it because it maintains an employee in Texas, is the only defendant remaining.

## II. *Analysis*

### A. *The Standard for Summary Judgment*

■■■ Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2549, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams*, 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Anderson*, 477 U.S. at 257, 106 S.Ct. at 2514–15; *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir.), *cert. denied*, 506 U.S. 825, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). The controverted evidence must be viewed in the light most favorable to the non-movant and all reasonable doubts must be resolved against the moving party. *Palmer v. BRG of Georgia, Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 402, 112 L.Ed.2d 349 (1990); *Anderson*,

477 U.S. at 255, 106 S.Ct. at 2513–14; *Judwin Properties, Inc. v. United States Fire Ins. Co.,* 973 F.2d 432, 435 (5th Cir.1992). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

### B. *Intentional Infliction of Emotional Distress*

IRT asserts that Bass is attempting to hold it liable for the publication of truthful information, and in so doing, she is seeking to circumvent the requirements for establishing a claim for libel. Therefore, IRT maintains that Bass's non-libel claims, such as intentional infliction of emotional distress, must be dismissed because Bass cannot show that any portion of the video series is false. Bass, on the other hand, contends that she has not alleged any claim for defamation, but, rather, IRT is attempting to replead her complaint. Bass further argues that the standard for establishing libel in this case is inapplicable because IRT is not a media defendant.

■ The United States Supreme Court has expressly precluded the recovery of damages for the publication of a statement under a theory of intentional infliction of emotional distress when the plaintiff has failed to establish the falsity of the statement. In *Hustler Magazine v. Falwell,* the Court stated:

> [P]ublic figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with "actual malice," *i.e.,* with knowledge that the statement was false or with reckless disregard as to whether or not it was true.

485 U.S. 46, 56, 108 S.Ct. 876, 882, 99 L.Ed.2d 41 (1988); *see also Liles v. Finstad,* No. 01–94–00258–CV, 1995 WL 457260, at *10 (Tex.App.—Houston [1st Dist.] Aug. 3, 1995, writ filed); *Valenzuela v. Aquino,* 800 S.W.2d 301, 307 (Tex.App.—Corpus Christi 1990), *aff'd in part, rev'd in part on other grounds,* 853 S.W.2d 512 (Tex.1993). The principle underlying the Court's decision in *Falwell* is that the plaintiff may not circumvent the protections accorded by the First Amendment by pleading a cause of action, such as intentional infliction of emotional distress, instead of a claim for defamation. *Valenzuela,* 800 S.W.2d at 307. Without regard to whether the plaintiff is a public or private figure, he must show falsity in order to recover damages from a media defendant. *Rogers v. Dallas Morning News, Inc.,* 889 S.W.2d 467, 472 n. 7 (Tex.App.—Dallas 1994, writ denied) (citing *McIlvain v. Jacobs,* 794 S.W.2d 14, 15 (Tex.1990)). Moreover, the First Amendment also protects non-media defendants in this situation. *See, e.g., Matthews v. Wozencraft,* 15 F.3d 432, 440 (5th Cir.1994). Thus, under *Falwell,* Bass is barred from recovering damages for intentional infliction of emotional distress for the dissemination of a truthful portrayal of Bass in the Imago video series.

■ If *Falwell* were not applicable to the case at bar, Bass would still have to satisfy all the elements of a claim for intentional infliction of emotional distress under Texas law in order to recover. To prevail on such a claim, Bass must establish:

(1) the defendant acted intentionally or recklessly;

(2) the defendant's conduct was extreme and outrageous;

(3) the defendant's actions caused her emotional distress; and

(4) the emotional distress suffered by her was severe.

*Burden v. General Dynamics Corp.,* 60 F.3d 213, 218 (5th Cir.1995); *MacArthur v. University of Tex. Health Ctr.,* 45 F.3d 890, 898 (5th Cir.1995); *McKethan v. Texas Farm Bureau,* 996 F.2d 734, 742 (5th Cir.1993), *cert. denied,* 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994); *Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 243 (5th Cir. 1993); *Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1375 (5th Cir.1992); *Johnson v. Merrell Dow Pharmaceuticals,* 965 F.2d 31, 33 (5th Cir.1992); *Dean v. Ford Motor Credit Co.,* 885 F.2d 300, 306 (5th Cir.1989); *Randall's Food Mkts., Inc. v.*

*Johnson,* 891 S.W.2d 640, 644 (Tex.1995) (citing *Twyman v. Twyman,* 855 S.W.2d 619, 621–22 (Tex.1993)); *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993).

While "extreme and outrageous," as used in the second element of this standard, is an amorphous phrase that escapes precise definition, there appears to be a consensus that conduct is "outrageous" if it is "atrocious" and surpasses "all possible bounds of decency," such that it is "utterly intolerable in a civilized community." *See MacArthur,* 45 F.3d at 898; *Ugalde,* 990 F.2d at 243; *Johnson,* 965 F.2d at 33; *Dean,* 885 F.2d at 306; *Randall's Food Mkts., Inc.,* 891 S.W.2d at 644; *Wornick Co.,* 856 S.W.2d at 734. In *Dean,* the Fifth Circuit (citing RESTATEMENT (SECOND) OF TORTS § 46, comment d (1965)) stated:

> Liability [for outrageous conduct] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.... Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to exclaim, "Outrageous."

885 F.2d at 306. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Ugalde,* 990 F.2d at 243; *Johnson,* 965 F.2d at 33; *Wilson v. Monarch Paper Co.,* 939 F.2d 1138, 1143 (5th Cir.1993). There is no occasion for the law to intervene in every case where someone's feelings are hurt. *Id.*

In cases claiming defamation, Texas courts have found that the defendant's alleged defamatory actions did not constitute outrageous conduct. For example, falsely depicting the plaintiff in his own community as a thief is insufficient to state a cause of action for intentional infliction of emotional distress. *See Diamond Shamrock Ref. & Mktg. Co. v. Mendez,* 844 S.W.2d 198, 202 (Tex.1992). Similarly, stating that the plaintiff's blood alcohol level was well in excess of that required for legal intoxication, when it actually was minimal and was attributable to diabetes, is not actionable under a theory of intentional infliction of emotional distress.

*See Reeves v. Western Co. of N. Am.,* 867 S.W.2d 385, 392 (Tex.App.—San Antonio 1993, writ denied). Under Texas law, potentially defamatory statements, including those that are false, abusive, unpleasant, objectionable, or imply that the plaintiff is guilty of a crime, simply do not give rise to a cause of action for intentional infliction of emotional distress. *Schauer v. Memorial Care Sys's.,* 856 S.W.2d 437, 451 (Tex.App.—Houston [1st Dist.] 1993, no writ). Here, Bass does not even allege that any portions of the video series are defamatory. Thus, it cannot be said that IRT's alleged actions of displaying and disseminating a video which does not contain any false information or a defamatory portrayal of Bass is outrageous.

Moreover, Bass has made no showing that any emotional distress from which she may be suffering is severe. A claim of intentional infliction of emotional distress requires that there be "sufficient proof of severe emotional distress, wholly apart from any outrageous conduct on the defendant's part." *Tidelands Auto. Club v. Walters,* 699 S.W.2d 939, 944 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.); *see also Badgett v. Northwestern Resources Co.,* 818 F.Supp. 998, 1003 (W.D.Tex.1993). The severity of distress is an element of the cause of action, not merely a matter of damages. *Benavides v. Moore,* 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied); *K.B. v. N.B.,* 811 S.W.2d 634, 640 (Tex.App.—San Antonio 1991, writ denied), *cert. denied,* 504 U.S. 918, 112 S.Ct. 1963, 118 L.Ed.2d 564 (1992).

"Emotional distress" means any highly unpleasant, mental reaction such as extreme grief, shame, humiliation, embarrassment, anger, disappointment, worry, or nausea. *Behringer v. Behringer,* 884 S.W.2d 839, 844 (Tex.App.—Fort Worth 1994, writ denied); *see also Badgett,* 818 F.Supp. at 1003; *Washington v. Knight,* 887 S.W.2d 211, 216 (Tex.App.—Texarkana 1994, writ denied); *Tidelands Auto. Club,* 699 S.W.2d at 945. In order to recover damages, however, the plaintiff must prove more than mere worry, anxiety, vexation, embarrassment, or anger. *McCray v. DPC Indus., Inc.,* 875 F.Supp. 384, 392 (E.D.Tex.1995) (citing *Regan v. Lee,* 879 S.W.2d 133, 136 (Tex.App.—

Houston [14th Dist.] 1994, no writ)); *Haryanto v. Saeed*, 860 S.W.2d 913, 923 (Tex. App.—Houston [14th Dist.] 1993, writ denied). "The law intervenes only where the distress is so severe that no reasonable person should be expected to endure it." *Behringer*, 884 S.W.2d at 844 (citing RESTATEMENT (SECOND) OF TORTS, comment j).

With respect to her claim for intentional infliction of emotional distress, Bass states in her complaint:

> Defendants have disseminated the series nationally, causing Plaintiff to suffer great embarrassment, humiliation, and mental anguish.
>
> \* \* \* \* \* \*
>
> [A]s a result of the aforementioned conduct described above, Defendants have intentionally inflicted emotional distress upon Plaintiff and, as a result thereof, Plaintiff has suffered actual damages as prayed for herein for which Plaintiff seeks recovery.

Bass, however, does not claim to have experienced any psychiatric problems, like those encountered by the plaintiff in *Johnson*, or even debilitating headaches, such as those suffered by the plaintiff in *Clayton*, stemming from IRT's actions. See *Johnson*, 965 F.2d at 33; *Clayton v. Nabisco Brands, Inc.*, 804 F.Supp. 882, 885 (S.D.Tex.1992). She certainly does not claim to be afflicted with anything approaching the possibly suicidal, reactive depression experienced by the plaintiff in *Wilson*. *See Wilson*, 939 F.2d at 1141; *see also Motsenbocker v. Potts*, 863 S.W.2d 126, 135 (Tex.App.—Dallas 1993, no writ); *American Med. Int'l, Inc. v. Giurintano*, 821 S.W.2d 331, 343 (Tex.App.—Houston [14th Dist.] 1991, no writ). Bass also does not allege that she suffers from post-traumatic stress syndrome as diagnosed in *Haryanto*. *See Haryanto*, 860 S.W.2d at 922. Hence, Bass has not shown that any emotional distress that she may have suffered is "so severe that no reasonable person could be expected to endure it." *Benavides*, 848 S.W.2d at 195; *K.B.*, 811 S.W.2d at 640.

Hence, Bass has failed to adduce specific facts sufficient to support two of the required elements of an intentional infliction of emo-

tional distress claim under Texas law—extreme and outrageous conduct and severe emotional distress. Moreover, because she does not allege that any of the statements or depictions contained in the video are false, Bass is precluded from recovering under a theory of intentional infliction of emotional distress on First Amendment grounds. Therefore, IRT is entitled to summary judgment on Bass's claim for intentional infliction of emotional distress.

### C. *Breach of Contract*

 IRT maintains it cannot be held liable on Bass's breach of contract claim because it was not a party to the release that Bass signed. Under Texas law, privity of contract is an essential element for recovery under a breach of contract theory. *Conway v. Saudi Arabian Oil Co.*, 867 F.Supp. 539, 542 (S.D.Tex.1994); *Jensen Constr. Co. v. Dallas County*, 920 S.W.2d 761, 772 (Tex. App.—Dallas 1996, n.w.h.); *Gonzales County Water Supply Corp. v. Jarzombek*, 918 S.W.2d 57, 61 (Tex.App.—Corpus Christi 1996, n.w.h.); *Cannon v. ICO Tubular Servs., Inc.*, 905 S.W.2d 380, 393 (Tex.App.—Houston [1st Dist.] 1995, no writ); *C & C Partners v. Sun Exploration & Prod. Co.*, 783 S.W.2d 707, 721 (Tex.App.—Dallas 1989, writ denied); *Republic Nat'l Bank v. National Bankers Life Ins. Co.*, 427 S.W.2d 76, 79 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). Generally, the maintenance of an action for breach of contract requires privity between the party damaged and the party sought to be held liable. *C & C Partners*, 783 S.W.2d at 721; *Republic Nat'l Bank*, 427 S.W.2d at 79.

 In this case, Bass and Ian signed a letter on Imago and Magnetic Arts's letterhead, indicating that they were interested in participating in the video project. The letter states, in pertinent part:

> Participation will entail the taping of (only with your permission, of course, and with signed releases) you and your spouse's interaction during the workshop, and at home and in other settings—in hopes of recording a full picture of your marriage in

a natural way before, during and after your workshop experiences.

\* \* \* \* \* \*

Additionally, the programs will feature dramatic recreations (with actors) portraying your childhood experiences (both woundings and positive moments). You would literally see your child-selves and your parents portrayed by actors—presenting your childhood memories that you shared with us during the televised workshop. It would be your responsibility to provide us with permission to dramatize these truthful events from your childhood which you select.

\* \* \* \* \* \*

As you may gather—we are looking for couples to share their lives with the world—people who are comfortable sharing details and intimate feelings that they choose to reveal on television, in order to help others. Rest assured that your needs will be respected; your privacy protected. Only what you choose to share will be seen.

\* \* \* \* \* \*

Please fill-out the form below and the attached release and return it to us as soon as possible so that we may consider you for inclusion in this exciting series. We will be contacting you in a few weeks to arrange an interview.

Bass and Ian signed the form attached to the letter, indicating that they wanted to be included in the video series:

I have read the above material, and understand the commitment involved in participating in the television/videocassette series of GETTING THE LOVE YOU WANT. I wish to be considered for participation in the project.

On March 9, 1992, Bass and Ian also signed a release with Imago and Magnetic Arts, which states:

RE: "Getting the Love You Want" Video/Television Project

For due consideration received, the undersigned hereby consents to the use of my name, picture, portrait and voice (herein referred to as my "appearance") in the above referenced project (hereinafter the "picture") which you are producing.

The undersigned hereby grants to you and your subsidiaries and affiliates and to your licensees and assigns and their subsidiaries and affiliates the right to edit in your discretion programs, appearances, and any materials approved and to exhibit my appearance in these programs or any part thereof of any remake, adaptation or new version thereof by any medium.

The undersigned also hereby consents to the use of my appearance for publicity and promotional purposes but not as direct endorsement of any specific product or service. I agree that no program or other materials be submitted to me for further approval.

Because IRT was not a party to the letter or to the release that Bass signed or to any other agreement with Bass, it cannot be held liable for an alleged breach of contract.

Moreover, Texas law does not permit the recovery of mental anguish damages for breach of contract. *Keith v. Stoelting, Inc.,* 915 F.2d 996, 998 (5th Cir.1990); *Dean v. Dean,* 837 F.2d 1267, 1268 (5th Cir.1988); *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994); *Hallmark v. Hand,* 885 S.W.2d 471, 481 (Tex.App.—El Paso 1994, writ denied); *Myrtle Springs Reverted Indep. Sch. Dist. v. Hogan,* 705 S.W.2d 707, 710 (Tex.App.—Texarkana 1985, writ denied), *cert. denied,* 480 U.S. 906, 107 S.Ct. 1350, 94 L.Ed.2d 520 (1987); *Otten v. Snowden,* 550 S.W.2d 758, 759–60 (Tex.Civ. App.—San Antonio 1977, no writ). In the instant case, Bass has pled only damages for mental anguish.

Thus, because IRT was not a party to the agreement between Bass and Imago and Magnetic Arts or to any other agreement with Bass and mental anguish damages are not recoverable in a breach of contract action under Texas law, Bass's breach of contract claim provides no basis for relief against IRT.

D. *Breach of the Duty of Good Faith and Fair Dealing*

The Texas Supreme Court has expressly rejected the imposition of a duty of

good faith and fair dealing in all contracts. *Childers v. Pumping Sys., Inc.*, 968 F.2d 565, 568 (5th Cir.1992); *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 595 n. 5 (Tex.1992); *Arnold v. National County Mut. Fire Ins. Co.*, 725 S.W.2d 165, 167 (Tex.1985); *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983); *Crowder v. Tri–C Resources, Inc.*, 821 S.W.2d 393, 398 (Tex.App.—Houston [1st Dist.] 1991, no writ); *Manufacturers Hanover Trust Co. v. Kingston Inv. Corp.*, 819 S.W.2d 607, 611–12 (Tex.App.—Houston [1st Dist.] 1991, no writ). In rejecting the notion of good faith and fair dealing, the court stated:

> Our system permits parties who have a dispute over a contract to present their case to an impartial tribunal for a determination of the agreement as made by the parties and embodied in the contract itself. To adopt the laudatory sounding theory of "good faith and fair dealing" would place a party under the onerous threat of treble damages should he seek to compel his adversary to perform according to the contract terms as agreed upon by the parties. The novel concept advocated by the courts below would abolish our system of government according to settled rules of law and let each case be decided upon what might seem "fair and in good faith," by each factfinder. This we are unwilling to do.

*English*, 660 S.W.2d at 522.

■■■■■ Moreover, "the Texas Supreme Court made clear that the existence of a contract, giving rise to a special relationship, 'is a necessary element of the duty of good faith and fair dealing.'" *Cavallini v. State Farm Mut. Auto. Ins. Co.*, 44 F.3d 256, 262 (5th Cir.1995) (quoting *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 697 (Tex.1994)). A duty of good faith and fair dealing arises only by express contractual language or when there is a special relationship between the parties. *See Childers*, 968 F.2d at 568; *Jhaver v. Zapata Off–Shore Co.*, 903 F.2d 381, 385 (5th Cir.1990); *Manufacturers Hanover Trust Co.*, 819 S.W.2d at 611–12; *Affiliated Capital Corp. v. Southwest, Inc.*, 862 S.W.2d 30, 34 (Tex.App.—Houston [1st Dist.] 1993, writ denied); *Crowder*, 821 S.W.2d at 398–99; *Arnold*, 725 S.W.2d at 167. Generally, a special relationship resulting in the imposition of the duty of good faith and fair dealing is found between an insurance company and its insured, but Texas courts have been reluctant to extend the duty of good faith and fair dealing to other contractual relationships. *Houston Cable TV, Inc. v. Inwood West Civic Ass'n, Inc.*, 839 S.W.2d 497, 504 (Tex.App.—Houston [14th Dist.] 1992, writ dism'd).

■■■■■ A special relationship may arise where the parties possess unequal bargaining positions and one party can easily take advantage of the other party. *Affiliated Capital Corp.*, 862 S.W.2d at 34; *see also Jhaver*, 903 F.2d at 385. A special relationship may also arise if a fiduciary or formal relationship requires trust and confidence. *Jhaver*, 903 F.2d at 385. "Formal relationships may arise from longstanding dealings, personal, social, or domestic, that justify the injured party's reliance." *Id.*

■■■■ Here, there was no contract between IRT and Bass upon which a duty of good faith and fair dealing could be engrafted. *See Cavallini*, 44 F.3d at 262; *Natividad*, 875 S.W.2d at 697. Moreover, there was no fiduciary relationship between IRT and Bass, nor was there a longstanding relationship, a course of dealing, or an inequality in bargaining positions between them, from which a duty of good faith and fair dealing could arise. Therefore, Bass's claim for breach of the duty of good faith and fair dealing is without merit.

### E. Deceptive Trade Practices Act

IRT argues that Bass cannot recover under the DTPA because she is not a consumer within the meaning of the Act, as she did not purchase or lease any services from IRT. IRT further contends that the DTPA is inapplicable to Bass's claims because all acts concerning her complaint occurred outside of Texas.

■■■ The DTPA provides: "False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful...." Tex.Bus. & Com. Code Ann. § 17.46(a). A mere breach or

nonperformance of a contract, however, does not constitute a false, misleading, or deceptive act under the DTPA. *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 14 (Tex.1996); *La Sara Grain Co. v. First Nat'l Bank*, 673 S.W.2d 558, 565 (Tex.1984); *Quitta v. Fossati*, 808 S.W.2d 636, 644 (Tex.App.—Corpus Christi 1991, writ denied); *Fidelity & Casualty Co. v. Underwood*, 791 S.W.2d 635, 644 (Tex.App.—Dallas 1990, no writ).

■■ In order to maintain a cause of action under the DTPA, the plaintiff must be a "consumer" as defined by the DTPA. *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 125 (5th Cir.1993); *Schmueser v. Burkburnett Bank*, 937 F.2d 1025, 1028 (5th Cir. 1991); *Keith*, 915 F.2d at 998; *McClung v. Wal–Mart*, 866 F.Supp. 306, 308 (N.D.Tex. 1994); *Eckman v. Centennial Sav. Bank*, 784 S.W.2d 672, 674 (Tex.1990). A consumer is someone who seeks to acquire goods or services by purchase or lease and these same goods or services form the basis of the complaint under the DTPA. *Meineke Discount Muffler*, 999 F.2d at 125; *Schmueser*, 937 F.2d at 1028; *Keith*, 915 F.2d at 998; *McClung*, 866 F.Supp. at 308; *Eckman*, 784 S.W.2d at 674. The DTPA specifically defines "consumer" as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services...." TEX.BUS. & COM.CODE ANN. § 17.45(4).

■■ The plaintiff, however, need not establish contractual privity with the defendant in a DTPA claim. *Wellborn v. Sears, Roebuck & Co.*, 970 F.2d 1420, 1426 (5th Cir.1992); *McDuffie v. Blassingame*, 883 S.W.2d 329, 333 (Tex.App.—Amarillo 1994, no writ); *D/FW Commercial Roofing Co. v. Mehra*, 854 S.W.2d 182, 185 (Tex.App.—Dallas 1993, no writ); *Allied Towing Serv. v. Mitchell*, 833 S.W.2d 577, 581 (Tex.App.—Dallas 1992). Thus, a party's consumer status does not turn on whether there is a contractual relationship with the defendant, but, rather, it is determined by the parties' relationship to the transaction. *Wellborn*, 970 F.2d at 1426; *Schmueser*, 937 F.2d at 1028; *Birchfield v. Texarkana Mem. Hosp.*, 747 S.W.2d 361, 368 (Tex.1987); *Kennedy v.*

*Sale*, 689 S.W.2d 890, 893 (Tex.1985); *Shelton Ins. Agency v. St. Paul Mercury Ins. Co.*, 848 S.W.2d 739, 744 (Tex.App.—Corpus Christi 1993, writ denied); *Allied Towing Serv.*, 833 S.W.2d at 581. The plaintiff has the burden of proving his or her consumer status. *Luker v. Arnold*, 843 S.W.2d 108, 111 (Tex.App.—Fort Worth 1992, no writ).

■■ Bass claims that she is a consumer under the DTPA because she acquired the services of Imago therapy. The letter from Imago and Magnetic Arts, explaining the project to potential participating couples, provides:

There would, of course, be no charge to you for the privilege to participate in this special workshop with Dr. Hendrix, and to appear on television. If this project feels right for you both, and you're one of the selected couples—you will receive a $500 honorarium to cover your personal expenses connected with participation. This would be paid to you by check at the completion of your commitments as outlined above. Due to logistical considerations, it's preferred that couples live within a 50 mile radius of New York City.

Bass admits that neither she nor anyone on her behalf was required to pay for the therapy she received during the filming of the video series. In fact, the letter explained to potential volunteers that they would receive a $500.00 honorarium for their participation. A gratuitous act is not a purchase under the DTPA. *Schmueser*, 937 F.2d at 1029; *Longview Sav. & Loan Ass'n v. Nabours*, 673 S.W.2d 357, 362 (Tex.App.—Texarkana 1984), *aff'd*, 700 S.W.2d 901 (Tex.1985). Because Bass did not pay for Imago therapy services, and, indeed, she received an "honorarium," she cannot be considered a consumer under the Act. *See Baker v. Missouri Pac. Truck Lines, Inc.*, 616 S.W.2d 389, 392 (Tex.Civ. App.—Houston [1st Dist.] 1981, no writ); *see also Longview Sav. & Loan Ass'n*, 673 S.W.2d at 362; *Hall v. Bean*, 582 S.W.2d 263, 265 (Tex.Civ.App.—Beaumont 1979, no writ); *Exxon Corp. v. Dunn*, 581 S.W.2d 500, 501 (Tex.Civ.App.—Dallas 1979, no writ). Moreover, Bass is not complaining about the Imago therapy itself; her complaint focuses instead on her inclusion in the video without

being afforded an opportunity to edit the final version.

■ Bass also argues that the DTPA does not limit a cause of action to events arising solely in Texas, but also to those out-of-state activities affecting the plaintiff in Texas. Under the DTPA, "trade" and "commerce" mean:

the advertising, offering for sale, sale, lease, or distribution of any good or service, of any property, tangible or intangible, real, personal, or mixed, and any other article, commodity, or thing of value, wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this state.

Bass relies on a Texas Court of Appeals case in support of her argument that the solicitation of Bass's participation in and the distribution of the video series affected Bass in Texas. In *Busse v. Pacific Cattle Feeding Fund # 1, Ltd.*, the court stated:

[a]lthough the Texas DTPA does not explicitly provide or state an intention that it is to apply to out-of-state facts affecting Texas consumers, it is to be applied liberally to protect those citizens from false, misleading, and unconscionable acts, and it does not provide that its application will be limited to acts or practices occurring in Texas. Moreover, the DTPA's definition of "trade" and "commerce" includes the sale of any good or service "wherever situated" if the trade or commerce directly or indirectly affects the people of Texas.

896 S.W.2d 807, 814 (Tex.App.—Texarkana 1995, writ denied). In that case, however, the plaintiff, a Texas resident, was solicited in part in Texas by an Iowa resident. *Id.* Similarly, a Texas federal district court held that where the alleged deceptive statements by the defendant occurred during telephone calls placed from California to Texas, the DTPA applied. *McClure v. Duggan,* 674 F.Supp. 211, 219 (N.D.Tex.1987).

In the case at bar, however, all activity regarding the solicitation of Bass and Ian as a participating couple and the filming of the "Getting the Love You Want" video series was restricted to New York and Connecticut. At that time, Bass was a Connecticut resident. She did not relocate to Texas until long after the completion of the video series, the video had been shown on the "Oprah Winfrey Show," and marketing and distribution were already in place. Thus, any alleged misrepresentations made to Bass occurred outside of Texas and it could not have been anticipated that they would have an effect on a Texas resident. Under these circumstances, the applicability of the DTPA is doubtful.

Hence, Bass has failed to prove her status as a consumer under the DTPA. Moreover, she has failed to establish that the DTPA is applicable to her claims, as all activities took place in New York or Connecticut and were not directed toward a Texas resident. Thus, Bass's DTPA claim must be rejected.

### F. *Negligence and Gross Negligence*

■ In Texas, for actionable negligence to arise, three elements must be satisfied:

(1) a legal duty owed by one person to another;

(2) a breach of that duty; and

(3) damages proximately resulting from the breach.

*Skipper v. United States,* 1 F.3d 349, 352 (5th Cir.1993), *cert. denied,* 510 U.S. 1178, 114 S.Ct. 1220, 127 L.Ed.2d 566 (1994); *Werner v. Colwell,* 909 S.W.2d 866, 869 (Tex.1995); *Doe v. Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d 472, 476 (Tex.1995); *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990); *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). Texas law defines gross negligence as "such an entire want of care as to establish that the act or omission was the result of actual conscious indifference to the rights, safety, or welfare of the person affected." *Transportation Ins. Co.,* 879 S.W.2d at 21. Gross negligence contains two components: 1) the defendant's act or omission, and 2) the defendant's mental state. *Id.* Gross negligence differs from negligence in that the defendant must be " 'consciously indifferent' " and his conduct must " 'create an extreme degree of risk.' " *Id.* (quoting *Williams v. Steves Indus., Inc.,* 699 S.W.2d 570, 573 (Tex.1985)).

The first inquiry addressed in all negligence cases is whether the defendant owed a duty to the plaintiff. *Crider v. United States,* 885 F.2d 294, 295 (5th Cir.1989), *cert. denied,* 495 U.S. 956, 110 S.Ct. 2561, 109 L.Ed.2d 743 (1990); *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Greater Houston Transp. Co.,* 801 S.W.2d at 525; *see also Richter v. Merchants Fast Motor Lines, Inc.,* 83 F.3d 96, 97 (5th Cir.1996); *Triplex Communications, Inc. v. Riley,* 900 S.W.2d 716, 720 (Tex.1995). The plaintiff must establish both the existence of a duty and the violation of that duty by the defendant. *Greater Houston Transp. Co.,* 801 S.W.2d at 525; *El Chico Corp.,* 732 S.W.2d at 311. When ascertaining whether the defendant owed a duty to the plaintiff, the court considers the following factors: "the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Bird v. W.C.W.,* 868 S.W.2d 767, 769 (Tex.1994); *Greater Houston Transp. Co.,* 801 S.W.2d at 525. Foreseeability is the most significant consideration. *Greater Houston Transp. Co.,* 801 S.W.2d at 525.

An allegedly negligent failure to perform a contract, standing alone, is not recognized as an actionable tort in Texas. *Heller Fin., Inc. v. Grammco Computer Sales,* 71 F.3d 518, 527 (5th Cir.1996); *Southwestern Bell Tel. Co. v. DeLanney,* 809 S.W.2d 493, 494 (Tex.1991); *Montgomery Ward & Co. v. Scharrenbeck,* 146 Tex. 153, 204 S.W.2d 508, 510 (1947); *Schindler v. Austwell Farmers Co-op.,* 829 S.W.2d 283, 289 (Tex.App.—Corpus Christi 1992), *aff'd as modified,* 841 S.W.2d 853 (Tex.1992). Instead, the plaintiff must show that the defendant breached a duty arising "independent of the fact that a contract exists between the parties." *DeLanney,* 809 S.W.2d at 494; *Janicek v. KIKK, Inc.,* 853 S.W.2d 780, 782 (Tex.App.—Houston [14th Dist.] 1993, writ denied); *River Consulting, Inc. v. Sullivan,* 848 S.W.2d 165, 170 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *United Serv. Auto. Ass'n v. Pennington,* 810 S.W.2d 777, 783 (Tex.App.—San Antonio 1991, writ denied). A duty arises independent of a contract when the duty is imposed by law rather than by the contract. *DeLanney,* 809 S.W.2d at 494; *Peco Constr. Co. v. Guajardo,* 919 S.W.2d 736, 738 (Tex.App.—San Antonio 1996, writ filed); *Leach v. Conoco, Inc.,* 892 S.W.2d 954, 961 (Tex.App.—Houston [1st Dist.] 1995, writ dism'd w.o.j.); *Pennington,* 810 S.W.2d at 783.

Here, Bass bases her negligence and gross negligence claims on the same facts as her claim for breach of contract. IRT's duties with respect to Imago therapy include training and educating Imago certified therapists and supplying the therapists with products and advertising for their workshops. The certified therapists, however, are not IRT employees, but, rather, are independent contractors, each doing his or her own local marketing and site selection. IRT also is involved in national marketing and the preparation of the national schedule of workshops. In addition, IRT makes available materials in a resources catalog, which includes the schedule for all the workshops, the names and locations of the Imago therapists, and other related items, such as the video in which Bass appears. Although IRT is involved in the marketing and distribution of the video series to a certain extent, IRT was not a party to any agreement regarding Bass's participation in the video series.

Any duty IRT had regarding Bass's inclusion in the video series would arise only if IRT were a party to the letter agreement, the release, or some other agreement with Bass. As discussed above, IRT was not a party to any contract with Bass, and, therefore, had no contractual duty to afford her the opportunity to edit the video series. Furthermore, IRT had no duty imposed by law, independent of a contract, to Bass. Hence, as IRT had no duty concerning Bass's participation in the video series, it cannot be found to have been negligent or grossly negligent with respect to her participation. *See Skipper,* 1 F.3d at 352; *Werner,* 909 S.W.2d at 869; *Boys Clubs of Greater Dallas, Inc.,* 907 S.W.2d at 476; *Greater Houston Transp. Co.,* 801 S.W.2d at 525; *El Chico Corp.,* 732 S.W.2d at 311. Thus, sum-

mary judgment is proper as to Bass's negligence and gross negligence claims.

### G. *Negligent Misrepresentation*

■ IRT asserts that Bass is attempting to plead a claim for negligent misrepresentation in her response to its motion for summary judgment. Bass, however, did not plead negligent misrepresentation in her first amended complaint. Now, she may not rely on a new claim, raised only in her response, to defeat IRT's motion for summary judgment. *See Kansas Mun. Gas Agency v. Vesta Energy Co.*, 840 F.Supp. 814, 821 (D.Kan.1993).

■ If properly pled, Texas law permits an action for negligent misrepresentation and has adopted the definition contained in the RESTATEMENT (SECOND) OF TORTS. *FDIC v. Calhoun*, 34 F.3d 1291, 1297 (5th Cir.1994); *Southwestern Clinic of Bone & Joint Diseases v. Farmers Ins. Group*, 850 S.W.2d 750, 752 (Tex.App.—Corpus Christi 1993, no writ). Under Texas law, the elements of negligent misrepresentation are:

(1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest;

(2) the defendant supplies "false information" for the guidance of others in their business;

(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and

(4) the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Federal Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex.1991); *Bluebonnet Sav. Bank, F.S.B. v. Grayridge Apartment Homes, Inc.*, 907 S.W.2d 904, 908 (Tex. App.—Houston [1st Dist.] 1995, writ denied); *Tri–Legends Corp. v. Ticor Title Ins. Co.*, 889 S.W.2d 432, 442 (Tex.App.—Houston [14th Dist.] 1994, writ denied); *Southwestern Clinic of Bone & Joint Diseases*, 850 S.W.2d at 753; *see also Calhoun*, 34 F.3d at 1298 n. 4 (quoting RESTATEMENT (SECOND) OF TORTS § 552(1) (1977)); *Richter, S.A. v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 939 F.2d 1176,

1185 (5th Cir.1991); *Geosearch, Inc. v. Howell Petroleum Corp.*, 819 F.2d 521, 524 (5th Cir.1987); *Rosenthal v. Blum*, 529 S.W.2d 102, 104 (Tex.Civ.App.—Waco 1975, writ ref'd n.r.e.). The duty under this tort has been narrowly extended beyond parties in contractual privity and may include intended beneficiaries or parties who forseeably would rely upon a defendant's representations. *Calhoun*, 34 F.3d at 1298 (citing *Cook Consultants v. Larson*, 700 S.W.2d 231, 234–35 (Tex.App.—Dallas 1985, writ ref'd n.r.e.)).

■ Even if Bass had pled a claim for negligent misrepresentation, Bass cannot satisfy the fourth element, that she suffered a pecuniary loss, as she has only asserted damages for mental anguish, a non-pecuniary loss. Under Texas law, damages for mental anguish may not be recovered on a claim for negligent misrepresentation. *Federal Land Bank Ass'n*, 825 S.W.2d at 442–43. As noted in *Federal Land Bank Ass'n*:

(1) The damages recoverable for a negligent misrepresentation are those necessary to compensate the plaintiff for the pecuniary loss to him of which the misrepresentation is legal cause, including

(a) the difference between the value of what he has received in the transaction and its purchase price or other value given for it; and

(b) pecuniary loss suffered otherwise as a consequence of the plaintiff's reliance upon the misrepresentation.

(2) the damages recoverable for a negligent misrepresentation do not include the benefit of the plaintiff's contract with the defendant.

*Id.* at 443 (quoting RESTATEMENT (SECOND) OF TORTS § 552B (1977)). The Texas Supreme Court has "decline[d] to extend damages beyond those limits provided in Restatement section 552B." *Id.*

Hence, because Bass did not plead negligent misrepresentation and she has not demonstrated that she suffered any pecuniary loss as a result of any misrepresentation by the defendant, IRT is entitled to summary judgment on the theory of negligent misrepresentation.

## III. *Conclusion*

Accordingly, IRT's motion for summary judgment is GRANTED. Bass has failed to establish that genuine issues of material fact exist as to any of her claims. Thus, IRT is entitled to judgment as a matter of law.

IT IS SO ORDERED.