Jeral J. CROWDER, Appellant,

v.

TRI-C RESOURCES, INC., Appellee.

No. 01-90-00937-CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 12, 1991.

Stanley J. Krist, Houston, for appellant.

David E. Black, Houston, for appellee.

Before COHEN, WILSON and PRICE *, JJ.

## OPINION

WILSON, Justice.

This is an appeal from a summary judgment rendered in favor of the defendant and appellee, Tri-C Resources, Inc. (Tri-C).

Plaintiff and appellant, Jeral Crowder (Crowder), sued Tri-C on November 3, 1989, alleging that Tri-C: (1) fraudulently induced him to enter into an oil and gas exploration and development agreement (the Cordele Agreement) by falsely promising him an opportunity to participate in any additional acreage or mineral interests it acquired within an "area of mutual interest" (AMI); (2) breached the Cordele Agreement by failing to give him an opportunity to participate in additional acreage or mineral interests within the AMI; and (3) breached its duty of good faith and fair dealing by excluding him from participation in the additional acreage or mineral interests within the AMI. Tri-C generally denied the allegations and affirmatively pled that Crowder's claim was barred by the statute of frauds, TEX.BUS. & COM.CODE ANN. § 26.01 (Vernon 1987).

In its motion for summary judgment, Tri-C argued that Crowder's breach of contract claim was barred by the statute of frauds, that any AMI terminated when both Crowder and Tri-C conveyed their interests in the Cordele Field to others, that as a matter of law no fraud existed as prohibited by TEX.BUS. & COM.CODE ANN. § 27.01 (Vernon 1987), and that as a matter of law Tri-C owed no duty of good faith and fair dealing to Crowder. The trial court granted Tri-C's motion without specifying its reasons.

On November 11, 1985, Crowder signed the Cordele Agreement with Tri-C in which he agreed to participate with Tri-C in the exploration and development of Tri-C's Cordele Field prospect in Jackson County, Texas. It is undisputed that the Cordele Agreement did not contain an "area of mutual interest" provision. On November 14, 1985, Crowder signed an operating agreement with Tri-C. It is undisputed that the operating agreement did not contain an AMI provision.

Crowder maintains that, during the negotiations and prior to the signing of the Cordele Agreement, he and Tri-C agreed that an AMI was part of the agreement. He supports his argument by pointing to a plat of the Cordele Field outlining in red an "area of mutual interest boundary" and a September 16, 1986, letter to him from Tri-C stating, "Tri-C Resources, Inc. has acquired by farmout an additional 320 acres within our area of mutual interest of the above referenced prospect." Robert Herrin, Tri-C's land manager, drew the plat after Crowder signed the Cordele Agreement and stated in his deposition that Crowder had an AMI. Crowder also asserts that the Cordele Agreement contemplates an AMI agreement when it states:

> Any additional leases in the designated prospect area that may be acquired prior to spudding the first well will also have costs set at $150.00 per net acre. Crowder will have an option of acquiring his proportionate interest in such leases.

In late 1987 or early 1988, Tri-C sold and conveyed all of its interest, and Crowder sold and conveyed approximately one-half of his interest, in the Cordele Field to the SASI-Cordele Joint Venture. On May 1, 1988, Crowder sold his remaining interest in the Cordele Field. In September 1988, Tri-C was offered and acquired other interests in the Cordele Field in the same general area as those covered by the Cordele Agreement. Tri-C did not offer Crowder a working interest in these acquisitions. These are the acquisitions that Crowder claims he was entitled to participate in.

■ A summary judgment for a defendant disposing of the entire case is proper if, as a matter of law, the plaintiff cannot succeed on any theories pleaded. *Havens v. Tomball Community Hosp.*, 793 S.W.2d

---

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

690, 691 (Tex.App.—Houston [1st Dist.] 1990, writ denied). When the summary judgment order does not state the specific grounds on which it was granted, a party appealing from such order must show that each of the independent grounds alleged in the motion is insufficient to support the order. *Tilotta v. Goodall,* 752 S.W.2d 160, 161 (Tex.App.—Houston [1st Dist.] 1988, writ denied); *McCrea v. Cubilla Condominium Corp.,* 685 S.W.2d 755, 757 (Tex. App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.). Accordingly, we examine whether, as a matter of law, Crowder's breach of contract claim is barred by the statute of frauds or was terminated as a result of the conveyance of his interest in the Cordele Agreement, his fraud allegation has no basis, and Tri–C owes a duty of good faith and fair dealing to Crowder.

In his first point of error, Crowder argues that the court erred in granting the summary judgment because there existed an enforceable AMI agreement, either through a sufficient memorandum, TEX. BUS. & COM.CODE ANN. § 26.01(a) (Vernon 1987), or by estoppel.

Both parties agree that an AMI agreement is subject to the statute of frauds, TEX.BUS. & COM.CODE ANN. § 26.01; *see Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 905, 908 (Tex.1982). Section 26.01(a) provides that an agreement subject to the statute of frauds, as an AMI agreement is, will be unenforceable unless it, or a memorandum of it, is in writing and signed by the person to be charged. While conceding that the AMI agreement was not part of the Cordele Agreement or joint operating agreement, Crowder contends that the statute of frauds was met because Tri–C acknowledged and referred to an area of mutual interest in a September 16, 1986, letter, and Herrin prepared the land plat showing the area of mutual interest.

Crowder relies on *Fulton v. Robinson,* 55 Tex. 401, 405 (1881), *Black v. Hanz,* 146 S.W. 309, 311 (Tex.Civ.App.—Austin 1912, no writ), *Taggart v. Crews,* 521 S.W.2d 703, 708 (Tex.Civ.App.—San Antonio 1975, no writ), and *Joiner v. Elrod,* 716 S.W.2d 606, 609 (Tex.App.—Corpus Christi 1986, no

writ). These cases involved, respectively, (1) a receipt for the sale of land signed by the owner and describing the property, (2) a letter from the buyer and an unsigned deed describing the conveyance and giving the price, (3) a letter countersigned by the property owner, describing the property and the sale price, and (4) an executed earnest money contract modified by an oral agreement.

█ The Texas Supreme Court stated in *Fulton* that the form of a receipt would not defeat it as a memorandum of contract for the sale of land if it were sufficient in other respects. 55 Tex. at 404. The documents in the cases cited by Crowder were sufficient because they described the transaction, described the land, stated the price, and were signed by the party to be charged. The statute of frauds requires that a memorandum of an agreement, in addition to being signed by the party to be charged, must be complete within itself in every material detail and contain all of the essential elements of the agreement so that the contract can be ascertained from the writings without resorting to oral testimony. *Cohen v. McCutchin,* 565 S.W.2d 230, 232 (Tex.1978). No part of the memorandum is more essential than the description of the land. *Smith v. Griffin,* 131 Tex. 509, 116 S.W.2d 1064, 1066 (1938). If the memorandum consists of two documents, the second document must refer to the first one. *See Morrow v. Shotwell,* 477 S.W.2d 538, 539 (Tex.1972); *Taber v. Pettus Oil & Refining Co.,* 139 Tex. 395, 162 S.W.2d 959, 961 (1942); *see also Owen v. Hendricks,* 433 S.W.2d 164, 166–67 (Tex.1968).

█ The plat, which may be a sufficient description of the land included in the alleged AMI, is not signed by a representative of Tri–C, and it does not refer to the September 16 letter, which is signed by a Tri–C representative. The September 16 letter does not refer to the plat, nor does it otherwise describe the land in the AMI. Neither taken together nor standing alone, do the plat and the September 16 letter contain the essential elements from which an AMI agreement can be ascertained. Nor does the Cordele Agreement provide

support for Crowder, since his option of acquiring proportionate interest in "such leases" refers only to leases acquired prior to spudding the first well. The AMI agreement asserted by Crowder does not comply with the statute of frauds.

■ Crowder also contends that under the principle of equitable estoppel, Tri–C is prevented from denying the existence of the AMI agreement. Again, Crowder relies on the September 16 letter and the deposition testimony from Herrin in which Herrin stated that Crowder had an AMI.

■ Estoppel is not an independent cause of action. It is defensive in character; its function is to preserve rights, not to bring into being an independent cause of action. *Sun Oil Co. (Delaware) v. Madeley,* 626 S.W.2d 726, 734 (Tex.1981); *Hermann Hosp. v. National Standard Ins. Co.,* 776 S.W.2d 249, 254 (Tex.App.—Houston [1st Dist.] 1989, writ denied). Therefore, Crowder cannot use the doctrine of equitable estoppel to establish a cause of action for a breach of an AMI agreement.

■ Crowder also asserts that, because Herrin stated in his deposition testimony that Crowder had an AMI agreement, Tri–C was judicially estopped from taking a contrary position. Under the doctrine of judicial estoppel, a party is estopped only if it alleged or admitted in its pleadings *in a former proceeding* under oath the contrary to the assertion sought to be made. *Long v. Knox,* 155 Tex. 581, 291 S.W.2d 292, 295 (1956); *see Aetna Life Ins. Co. v. Wells,* 557 S.W.2d 144, 147 (Tex.Civ. App.—San Antonio 1977, writ ref'd n.r.e.) (doctrine of judicial estoppel most frequently applied where statement giving rise to estoppel was made in prior judicial proceedings). Because Herrin's deposition was made during this proceeding, the doctrine of judicial estoppel is inapplicable.

If there was an AMI agreement between Crowder and Tri–C, it cannot be enforced through estoppel and because of the statute of frauds. We overrule appellant's first point of error.

■ In his second point of error, Crowder contends that the court erred in granting summary judgment because he did not convey his rights in the area of mutual interest when he conveyed his other rights in the Cordele Field.

Jeral J. Crowder is defined as one of the "sellers" who conveyed certain interests to Paul E. Cameron, Jr., Inc. on May 1, 1988. It is uncontroverted that this conveyance covered the last of Crowder's interest in the Cordele Field under the Cordele Agreement and the joint operating agreement. The issue is whether his interest included the alleged AMI agreement. In pertinent part, the conveyance provides:

Seller, for good and valuable considerations, the full receipt and sufficiency of which are hereby acknowledged and confessed, and subject to the terms hereof, does hereby grant, bargain, sell, transfer, set over, convey, assign and deliver unto Buyer the full interest and estate of Seller in, to and under the following described property, to-wit:

A. *All of the oil and gas leases,* and oil, gas and mineral *interests,* and any and all *rights appertaining thereto,* which are described on Exhibit "B" (all of which are collectively referred to as "Lease and Mineral Interests)....

. . . .

B. *Rights existing* in favor of Seller under all presently existing oil and gas sales, purchase, exchange and processing contracts, casinghead gas contracts, unit agreements, *operating agreements,* including any and all operator's liens, communization agreements, pooling agreements, and *other contracts, agreements and instruments relating to any of the Lease and Mineral Interests,* or to the production, sale, processing and transportation of oil and gas from or attributable to the Lease and Mineral Interests, including all rights-of-way and easements pertaining thereto....

(Emphasis added.)

Crowder relies on *Courseview, Inc. v. Phillips Petroleum Co.,* 158 Tex. 397, 312 S.W.2d 197 (1957), to argue that an AMI right to purchase any future interest is separate and distinct from the ownership of the leasehold or mineral estate and must be

specifically conveyed. In *Courseview,* Amos L. Beaty & Company and Phillips Petroleum Company executed a contract in 1939 that included, among other things, in paragraph seven, a purchase option right should any party purchase any royalty or mineral interest or fee title within an area specified in the contract. 312 S.W.2d at 200. In 1943 and 1945, Beaty and Phillips converted Beaty's net profit interest under the 1939 contract into an overriding royalty. 312 S.W.2d at 201. This overriding royalty and other property were conveyed by Beaty to Burch and by Burch to Mid–Coast in 1946. *Id.* In 1949, the officers of Beaty executed to Burch a deed purporting to convey all of Beaty's property and assets of every kind because Beaty had been dissolved. *Id.* In 1950, Burch conveyed to Courseview all rights owned by him in any contracts between Beaty and Phillips. *Id.* Both Mid–Coast and Courseview claimed entitlement to the paragraph seven purchase option right.

Courseview relied on the 1950 conveyance from Burch to support its claim. Mid–Coast rested its claim on the 1946 conveyance from Beaty to Burch, which, after the description of the mineral leases conveyed, stated as follows:

> Together, in each case, with all its right, title and interest in and to any *additional, correction, or amended* leases, extensions, renewals, contracts or agreements covering or in any manner affecting said properties.

312 S.W.2d at 201–202. According to Mid–Coast, this provision conveyed all of Burch's right, title, and interest in *any* agreement covering or affecting the mineral leases described; the 1939 contract was such an agreement; and the paragraph seven purchase option passed under the 1946 conveyance. 312 S.W.2d at 202. The supreme court disagreed, finding that the literal language referred only to "additional, correction, or amended" leases or contracts, not original contracts, such as the 1939 contract, previously mentioned in the conveyance. 312 S.W.2d at 202. According to the court, although the paragraph seven purchase option was created by the 1939 contract that gave rise to the over-

riding royalty, the purchase option was entirely separate from the ownership of the mineral interests passed by the 1946 conveyance. 312 S.W.2d at 202. Therefore, as between Mid–Coast and Courseview, the court found Courseview to be the owner of the paragraph seven purchase option.

Unlike the 1946 conveyance in *Courseview,* the conveyance of the sellers, including Crowder, to Paul E. Cameron, Jr., Inc. did not include *only* mineral interests or amendments to such mineral interests. The May 1, 1988, conveyance included "Rights existing in favor of Seller under all presently existing ... *contracts, agreements and instruments relating to any of the Lease and Mineral Interests ....*" This language clearly encompasses the conveyance of any alleged AMI agreement. *See Reilly v. Rangers Management, Inc.,* 727 S.W.2d 527, 529 (Tex.1987) (contract language should be given its plain grammatical meaning unless it definitely appears the intention of the parties would be defeated).

Even if Crowder's argument and reliance on *Courseview* are correct, he is still trying to enforce an oral AMI agreement. As we discussed under point of error one above, to be enforceable under the statute of frauds, TEX.BUS. & COM.CODE ANN. § 26.-01(a), an AMI agreement must be in writing.

We overrule appellant's second point of error.

◼ In his third point of error, Crowder urges the court erred in granting summary judgment because a special relationship existed between himself and Tri–C, giving rise to a duty of good faith and fair dealing that was breached by Tri–C.

◼ The Texas Supreme Court has declined to impose an implied covenant of good faith and fair dealing in every contract. *Arnold v. National County Mut. Fire Ins. Co.,* 725 S.W.2d 165, 167 (Tex. 1987); *see also English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983). However, a duty of good faith and fair dealing may arise as a result of a special relationship between the parties governed or created by

a contract. *Arnold,* 725 S.W.2d at 167. Crowder maintains that, under the reasoning in *Smith v. Bolin,* 271 S.W.2d 93 (1954), *Omohundro v. Matthews,* 161 Tex. 367, 341 S.W.2d 401 (1960), and *Gaines v. Hamman,* 163 Tex. 618, 358 S.W.2d 557 (1962), a special relationship existed between him and Tri–C.

■ These cases, *Smith, Omohundro,* and *Gaines,* all involved causes of action based on constructive trust. *Gaines,* 358 S.W.2d at 558; *Omohundro,* 341 S.W.2d at 402; *Smith,* 271 S.W.2d at 94. A constructive trust is imposed by law because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property. *Omohundro,* 341 S.W.2d at 405. The cases involved suits by partners against each other, where the partnership was established orally and through a course of dealing or by a written agreement. *Gaines,* 358 S.W.2d at 560; *Omohundro,* 341 S.W.2d at 409; *Smith,* 271 S.W.2d at 94.

Crowder does not seek a constructive trust, nor was he in partnership with Tri–C. In the joint operating agreement, Tri–C was the operator and Crowder was a nonoperator. In the Cordele Agreement, Crowder was an investor in the exploration and development of the field. Moreover, the relationship between Crowder and Tri–C ended when both assigned their interests in the Cordele Agreement and the joint operating agreement to a third party, several months before Tri–C once again acquired interests in the Cordele Field. As a matter of law, the relationship between Crowder and Tri–C was not one that gave rise to a duty of good faith and fair dealing. The cases cited by Crowder—*Smith, Omohundro,* and *Gaines*—do not support him.

Citing *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962) and *Consolidated Gas & Equipment Co. v. Thompson,* 405 S.W.2d 333 (Tex.1966), Crowder also asserts that a special relationship may be established when one has placed special confidence in another because the latter is bound in equity and good conscience to act in good faith and with due regard for the interest of the former. Crowder states that he placed special confidence in Tri–C when he entered into the alleged AMI agreement and participated in the oil and gas "joint venture," and that he also placed special confidence in Tri–C because of its "unique knowledge within the AMI."

In *Thigpen,* the supreme court stated that a confidential relationship could arise from "moral, social, domestic or purely personal relationships," but held that mere subjective trust alone was not enough to transform arms-length dealing into a fiduciary relationship. 363 S.W.2d at 253. The court reiterated its holding in *Consolidated Gas & Equipment Co.,* and stated that for a constructive trust to arise there must be a fiduciary relationship before, and apart from, the agreement made the basis of the suit. 405 S.W.2d at 336.

Crowder alleges no facts, other than his subjective trust, to establish that he had a kind of confidential relationship with Tri–C. There is no evidence in the record before us to transform what appears to be an arms-length transaction into a fiduciary relationship.

We overrule appellant's third point of error.

■ In his fourth point of error, Crowder argues that the court erred in granting summary judgment because there exists a genuine issue of material fact of fraud.

In his pleading, Crowder states that Tri–C promised to give him an opportunity to participate in additional acreage; that such promise was material and made to induce him to enter into the Cordele Agreement; that Tri–C intended not to fulfill the promise; and that he relied on the promise when entering into the Cordele Agreement. For purposes of this point of error, we will assume that Crowder's contentions are correct. Even if they are correct, summary judgment for Tri–C was still proper.

We have held that Crowder conveyed away any alleged AMI agreement under the *May 1, 1988,* conveyance to Paul E. Cameron, Jr., Inc. Tri–C had already conveyed away its interest in the Cordele Field

before this date. Crowder's complaint is that, because of his AMI agreement, Tri-C should have invited him to participate in the Cordele Field when Tri-C reentered the field in *September 1988*. However, if Crowder had an AMI before May 1, 1988, he certainly did not have one after that date. Therefore, Tri-C was not obligated to invite him to participate in its new interests in the Cordele Field, acquired in September 1988. The alleged fraudulent scheme did not injure Crowder because he sold his interest before Tri-C acquired its new interests within his alleged AMI.

Furthermore, Crowder did not contend, in his pleadings or response to Tri-C's motion for summary judgment, that Tri-C's sale of its Cordele Field interests in late 1987 or early 1988 and subsequent purchase of other interests in the same field in September 1988 was a sham transaction designed to free Tri-C of Crowder's alleged AMI interest. Nor did he contend that his May 1, 1988, sale was involuntarily forced on him by anything Tri-C did or failed to do.

Accordingly, we overrule appellant's fourth point of error and affirm the summary judgment.