NO. 07-03-0101-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 27, 2003
_____

PAUL TROCCHIO AND ELLEN TROCCHIO, APPELLANTS

V.

TONY WAGNER AND SHERRI WAGNER, APPELLEES

_____

FROM THE 72ND DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2001-515,868; HONORABLE JOHN T. FORBIS, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

**MEMORANDUM OPINION**

By this appeal, Paul and Ellen Trocchio challenge the trial court's judgment following a bench trial that Tony and Sherri Wagner are the owners of a one acre tract of land in Lubbock County, subject to a vendor's lien to secure payment of the balance of the purchase price. With their sole issue, the Trocchios contend the evidence is legally and

factually insufficient to support the judgment because the agreement to sell the property in issue did not satisfy the statute of frauds. Based upon the rationale set out below, we reverse and render in part and reverse and remand in part.

In 1979 or 1980, the Trocchios purchased and set up residence on part of a ten acre tract of property out of the West ½ of Section 25, Block JS, in Lubbock County. At some point, the Trocchios gave each of their two sons a one acre tract and sold another acre to the Hopper family.[1] In late 1996 or early 1997, the Trocchios entered into a verbal agreement to sell to the Wagners one acre out of their remaining acreage for $3500, payable in monthly installments. The Wagners made a payment in March of 1997 in the amount of $300. That payment was reflected in a receipt signed by Paul Trocchio indicating that it was a "Land Payment" for two months "on one acre of Land." The Wagners made another payment in August of 1997 in the amount of $1000, which was reflected by an unsigned receipt indicating "payment on one acre Land." According to the Wagners, they made an additional payment of $200 in July of 1999, which was allegedly memorialized by an unsigned receipt bearing a "Mac Tools" heading and reflecting only the name "Tony" and the figure "$200.00." In August of 2001, the Wagners employed a surveyor to prepare a plat of survey of the land they were attempting to purchase.[2] The

---

[1]There is no evidence that any of the tracts were fenced.

[2]Because the plat of survey offered into evidence at trial by the Wagners described the land by metes and bounds, we conclude none of the Trocchios' land was platted into lots or blocks.

Trocchios, on October 31, 2001, filed suit against the Wagners claiming they were trespassing and seeking a "judgment for title to the real and personal property."

At trial, the court heard the testimony of the Trocchios, the Wagners, and the Hoppers regarding their recollections of the terms of the agreement for the sale of the land in issue. The court also admitted into evidence the three receipts referenced above, along with the plat of survey. At the close of evidence, the trial court rendered judgment in favor of the Wagners declaring them to be "the owners of the real property in question," fixing the amount the Wagners still owed on the land, and setting the interest rate to be applied to the principal. The trial court denied the Wagners' counterclaim for damages for the value of the improvements they claimed they had made to the property.[3] Finally, the trial court granted the Trocchios an equitable vendor's lien to be enforced in the event the Wagners did not pay the balance due on the property within 120 days of the date of the entry of the judgment. In response to a request by the Trocchios, the trial court entered findings of fact and conclusions of law upon which it based the judgment.

With one issue, the Trocchios claim the evidence is legally and factually insufficient to support either the judgment or the findings of fact and conclusions of law entered by the trial court because the agreement between the parties did not satisfy the statute of frauds. Specifically, the Trocchios complain the agreement violated the statute because it was not

---

[3]Among other improvements, the Wagners drilled a water well in 1998 or 1999.

3

in writing and was not signed by the them. Finding that the receipts and survey plat, taken together, are insufficient to satisfy the statute of frauds in this case, we agree.

Initially, we note that findings of fact in a bench trial have the same force as a jury's verdict upon jury questions. City of Clute v. City of Lake Jackson, 559 S. W.2d 391, 395 (Tex.Civ.App.-- Houston [14th Dist.] 1977, writ ref'd n.r.e.). Findings of fact are reviewable for factual and legal sufficiency under the same standards that are applied in reviewing evidence supporting a jury's answer. Zieben v. Platt, 786 S.W.2d 797, 799 (Tex.App.--Houston [14th Dist.] 1990, no writ); *see also* W. Wendell Hall, Revisiting Standards of Review in Civil Appeals, 24 St. Mary's L.J. 1045, 1145 (1993).

Where an appellant challenges both legal and factual sufficiency of the evidence, the appellate court should first review the legal sufficiency challenge. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). In doing so, the reviewing court considers the evidence in the light most favorable to the finding to determine if there is any probative evidence, or reasonable inferences therefrom, which supports the finding. *Id*. at 401. The court disregards all evidence and inferences to the contrary. Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992). In considering a factual sufficiency issue, we review all the evidence and reverse only if the challenged finding is so against the great weight and preponderance of the evidence as to be manifestly unjust. *See* Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986). We are not to reweigh the evidence and set aside the finding merely because we feel a different result is more reasonable. *Id.* at 634.

4

We are not so bound by the trial court's conclusions of law and review those conclusions *de novo* to determine their correctness. Hydrocarbon Mgt. v. Tracker Exploration, 861 S.W.2d 427, 431 (Tex.App.–Amarillo 1993, no writ).

As pertinent to the resolution of this appeal, the trial court made the following findings of fact:

\* \* \*

2.    The agreement reached between [the Trocchios] and [the Wagners] with regard to the sale of the real property in question is supported by a writing signed by Paul Trocchio.

3.    That there were written receipts signed by [Trocchios] and accepted by [the Wagners].

4.    That there was a survey prepared that described the land conveyed.

\* \* \*

7.    That [the Wagners] were pay [sic] 8.5% interests [sic] on the unpaid balance.

Based upon the preceding findings, the court then entered the following pertinent conclusions of law:

\* \* \*

2.    That the receipts and survey satisfy the statute of frauds.

3.    That the receipts and survey set forth the essential terms of the contract for the purchase of the one-acre.

4.    The contract is sufficiently defined in its terms that the Court can understand what the promissor under took [sic].

5. The terms of the contract are expressed in a manner that the Court is capable of understanding the terms and fix the legal obligations and liabilities of the parties within reasonable certainty.

6. That there was a meeting of the minds on all essential elements of the contract.

A contract for the sale of real estate is not enforceable under the statute of frauds unless the promise or agreement, or a memorandum of it, is (1) in writing; and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him. *See* Tex. Bus. & Com. Code Ann. § 26.01(a) & (b)(4). The statute of frauds also requires that the memorandum of the agreement be complete within itself in every material detail and contain all essential elements of the agreement so that the contract can be ascertained from the writings without resort to oral testimony. Crowder v. Tri-C Resources, Inc., 821 S.W.2d 393, 396 (Tex.App.–Houston [1st Dist.] 1991, no writ). No part of the memorandum is more essential than the description of the land. *Id.* The legal description "must be furnished with the original writing itself, or by reference to some other *existing* writing." Boddy v. Gray, 497 S.W.2d 600, 603 (Tex.Civ.App.--Amarillo 1973, writ ref'd n.r.e.)(emphasis in original).

In determining whether a memorandum is sufficient to comply with the statute of frauds, the trial court is confined to what the memorandum contained or referred to on the date of its execution. Taber v. Pettus Oil & Refining Co., 139 Tex. 395, 162 S.W.2d 959, 961 (1942). The written evidence required under the statute of frauds need not be

6

comprised in a single document; rather, two or more scripts in combination will do. Street v. Johnson, 96 S.W.2d 427, 429 (Tex.Civ.App.–Amarillo 1936, no writ). However, before the memorandum can be supplemented to avoid the bar of the statute of frauds, both it and the physically connected instruments must show on their faces, either by express reference to each other or by reference to the same subject matter, their connection to each other. Douglass v. Texas-Canadian Oil Corporation, 141 Tex. 506, 174 S.W.2d 730, 731 (1943).

The trial court determined that the three receipts and the plat of survey, taken together, satisfied the statute of frauds. However, none of the receipts provided a sufficient legal description of the property. *Cf*. Chisholm v. Hipes, 552 S.W.2d 519, 521 (Tex.Civ.App.--Amarillo 1977, no writ)(when a writing describes land only by quantity and as being part of a larger tract without further identification of the tract to be conveyed, it will not satisfy the statute of frauds). An adequate legal description of the land was especially important in this case because (1) the tract under consideration was to be carved out of what was left of the Trocchios' ten acre tract, and (2) the property described on the plat prepared by the surveyor in August 2001 did not correspond to the property originally under consideration. Indeed, Wagner testified at trial, "the property that I got, all right, is different than what I have surveyed here."[4] In addition, only one of the receipts

_____

[4]Apparently, after the survey was done, the Trocchios "changed the property" to eliminate a roadway that connected their property to that owned by one of their sons.

was actually signed by the party to be charged, and none of them referenced any other written description of the land at issue. The plat of survey could not have provided the requisite legal description because it was not even in existence at the time the "contract" for the sale of land was executed in late '96 or early '97. Furthermore, the plat did not reflect the parties' signatures, and it did not reference the receipts. Finally, none of the documents relied upon by the trial court referred to the interest rate to be charged (though each party agreed interest was to be applied), the amount of the monthly installments, or the length of the contract. It can hardly be said under the circumstances presented here that the memorandum of the agreement was complete within itself in every material detail and contained all essential elements of the agreement. *Crowder*, 821 S.W.2d at 396. In short, the evidence is legally insufficient to support the trial court's judgment. That conclusion pretermits a discussion of the Trocchios' factual insufficiency claim. The Trocchios' sole issue is sustained.

Having found the evidence legally insufficient, we have the duty to render the judgment the trial court should have rendered. See Tex. R. App. P. 43. 2(c). Accordingly, the trial court's judgment is reversed, and judgment is hereby rendered in favor of the Trocchios that they have title to the property in question, and that they are entitled to a writ of possession to reclaim it. With respect to the trial court's denial of the Wagners' counterclaim for damages, we reverse and remand for further proceedings in accordance with this opinion. Tex. R. App. P. 43.2(d).

8

Don H. Reavis
Justice