

# NUMBER 13-15-00621-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

STANLEY D. BUJNOCH, LIFE ESTATE, ET AL.,        **Appellants,**

**v.**

COPANO ENERGY, LLC, ET AL.,        **Appellees.**

**On appeal from the 2nd 25th District Court
of Lavaca County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Contreras and Benavides
Memorandum Opinion by Chief Justice Valdez**

This is an appeal from a summary judgment granted in favor of appellees Copano Energy, LLC, et al. (Copano). By two issues, appellants Stanley D. Bujnoch, Life Estate, et al. (the Bujnochs) contend that the trial court erred by granting Copano's motion for summary judgment and dismissing their claims against Copano for (1) breach of contract, and (2) tortious interference. We affirm in part and reverse and remand in part.

## I.  BACKGROUND

The Bujnochs[1] own property in Lavaca and Dewitt counties.  In 2011, the Bujnochs granted to Copano[2] a thirty-foot wide easement for the construction, operation, and maintenance of a 24-inch pipeline on their properties.  The easements were signed by the parties and recorded in the county records.

### December 2012

In December 2012, Copano approached the Bujnochs about obtaining a second easement to construct an additional 24-inch pipeline on their properties.  Marcus Schwartz, counsel for the Bujnochs, negotiated the second easement with James Sanford (James), Copano's Director of Right-of-Way Services.  James and Schwartz exchanged several emails concerning the terms of the second easement.

On December 7, 2012, James emailed Schwartz that "[Copano] will be buying an additional 20 feet easement contiguous to the first easement for a 2nd 24 inch gas line." James typed his name below this message.  In a previous e-mail that day, James wrote that Copano "will be laying the line generally on the [n]orth side of the existing 24 inch line."  James typed his name below that message too.

---

[1] Unless otherwise specified, "the Bujnochs" refer to the following individuals and companies: Stanley D. Bujnoch, Life Estate, Betty A. Bujnoch, Life Estate, James J. Bujnoch, Sally Ann Bujnoch, K & HR Properties, L.P., Susan K. McDowell, Allan Grahmann, Shelly E. Summers, Cauley-Barker, Ltd., Jo Ann Schindler, Independent Executrix of the Estate of Annie Mae Technik, Deceased and Trustee of the Annie Mae Technik Family Trust, Sandra Kay Coe, Stanley D. Bujnoch, Transportation Equipment, Inc., Harvey Renger Jr., Trustee of the Harvey Renger Jr. Trust, and Alice Friedrich.

[2] Unless otherwise specified, "Copano" refers to the following companies:  Copano Energy, LLC; Copano Pipelines/South Texas LLC; Copano Pipelines, GP, LLC; Copano Energy Services GP, LLC; CPNO Services, LLC; and Kinder Morgan Energy Partners, L.P.

Two weeks later, Copano created a proposed plat using the plat from the original easement. This plat, which is shown below, reflects that the second easement will run adjacent to the existing easement on the north side:



[Figure 1]

**January 2013**

On January 29, 2013, appellee Kinder Morgan Energy Partners, L.P (Kinder Morgan) and Copano publically announced their impending merger.

The next day, on January 30, 2013, James emailed Schwartz agreeing to pay Schwartz's "clients $70 per foot for the second 24-inch line." James typed his name below this message. Minutes later, Schwartz accepted Copano's offer and requested that James provide advance notice to the Bujnochs before surveying their properties.[3]

**February 2013**

---

[3] There is no evidence that Copano actually went onto the Bujnochs' properties to perform the survey referenced in Schwartz's email.

3

On February 12, 2013, James emailed Schwartz agreeing to pay one of the appellants, Transportation Equipment, Inc., $88 per foot for the second easement. James typed his name below this message, and he included a signature block that detailed his job title, address, and phone number.

On February 13, 2013, Schwartz's legal secretary sent an email to James, in which she requested that he approve a formal amendment to the original easement. Schwartz's legal secretary included the amendment as an attachment to the email. The formal amendment modified the description of the original easement, consistent with the parties' email communication, by adding an additional 24-inch pipeline and by widening the original easement an additional twenty feet, for a total of two 24-inch pipelines running within a fifty-foot easement. That same day, James replied to the email stating "I am fine with these changes." James typed his name below this message.

The summary judgment record shows that, throughout February 2013, a Copano representative named Thomas Goolsby mailed letters to each of the Bujnochs on Copano stationary. Included in each letter was a copy of the December 2012 plat shown above and an offer to pay no more than $25 per foot for the second easement. Each letter purported to enclose a "Pipeline Easement Amendment," which the Bujnochs were instructed to sign and return to Goolsby if they wished to accept the offer.[4] The letter made no reference to the agreement James and Schwartz made through their email exchanges. None of the Bujnochs accepted Goolsby's offer.

---

[4] The letters stated that a "Pipeline Easement Amendment" was enclosed with the letter, but the summary judgment record does not reflect such amendment.

**March 2013**

By March 2013, Kinder Morgan was in the process of finalizing its merger acquisition of Copano.[5] With this acquisition approaching, Schwartz received an email from Brent Eubank, another representative purporting to act on behalf of Copano. Eubank wrote Schwartz that he was sending a "landowner compensation proposal letter" on behalf of Copano that would explain what Copano was willing to pay for the second easement. The proposal letters offered $20 to $40 per foot for the second easement.

Schwartz forwarded Eubank's email to James with a message in all caps stating "THIS IS NOT OUR DEAL WHAT IS GOING ON?" to which James replied:

> I know that this is not our deal. I believe that we have most of the plats. I think that we can start closing easements no later than the end of March (I want to be done by the end of April). Our deal still stands. Copano does not want to go to court with any of your clients. The letter went out to all of the attorneys that represent landowners on the pipeline. I am not sure why [Eubank] chose to send you . . . this letter. They knew that we already had a deal for your clients. I am sorry for the confusion. [6]

Despite James's assurances, neither Copano nor Kinder Morgan honored the agreement to purchase the second easement at the prices that James initially offered and that the Bujnochs accepted.

**Lawsuit**

The Bujnochs sued Copano for breach of contract, alleging that James bound the company to the agreement to purchase the second easement at $70 per foot (or $88 per foot for Transportation Equipment, Inc.), as evidenced by his email exchanges with Schwartz and his approval of the formal amendment to the original easement. The

---

[5] Kinder Morgan finalized its acquisition of Copano in May 2013.

[6] James typed his name below this message and included his signature block.

Bujnochs also sued Kinder Morgan for tortiously interfering with this agreement during its acquisition of Copano.

Copano responded to the lawsuit by moving for summary judgment as to the Bujnochs' breach-of-contract claim. Copano asserted that the statute of frauds barred enforcement of any agreement to purchase the second easement at the prices James offered. Kinder Morgan responded to the lawsuit by moving for summary judgment as to the Bujnochs' tortious-interference claim. Kinder Morgan asserted that the tortious interference claim had no merit because the statute of frauds barred enforcement of the underlying contract.

The trial court granted Copano and Kinder Morgan's motions for summary judgment and dismissed the Bujnochs' claims for breach of contract and tortious interference. The trial court did not specify the basis for its summary judgment. This appeal followed.

## II.     STATUTE OF FRAUDS

By their first issue, the Bujnochs contend that the trial court erred in dismissing their claim against Copano for breach of contract under the statute of frauds.

### A.     Standard of Review

Summary judgment is proper if a movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 644 (Tex. 1995); *Mowbry v. Avery*, 76 S.W.3d 663, 690 (Tex. App.—Corpus Christi 2002, pet. denied). A defendant who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment. *See Cathey v. Booth*, 900 S.W.3d 339, 341 (Tex. 1995).

6

In reviewing a summary judgment, "we must accept as true evidence in favor of the nonmovant, indulging every reasonable inference and resolving all doubts in the nonmovant's favor." *Id.*

## B. Applicable Law

The statute of frauds is an affirmative defense to the enforceability of a contract. *See* TEX. R. CIV. P. 94. It requires that certain types of contracts must be evidenced by a writing of some kind. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b) (West, Westlaw through 2017 1st C.S.). As relevant here, an agreement to purchase an easement is not enforceable unless the agreement, or a memorandum of it, is "(1) in writing; and (2) signed by the person to be charged with the . . . agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE ANN. § 26.01(a); *see id.* § 26.01(b); *Pick v. Bartel*, 659 S.W.2d 636, 637 (Tex. 1983). "A memorandum is required by the statute of frauds, not for the purpose of obtaining a contract in writing, but merely to furnish written evidence, signed by the party to be charged, of the obligation to be enforced against him." *Adams v. Abbott*, 151 Tex. 601, 604–05, 254 S.W.2d 78, 80 (1952). Therefore, "a valid memorandum of the contract may consist of letters and telegrams signed by the party to be charged and addressed to . . . the other party to the contract." *Id.*

A written memorandum evincing an agreement need not contain all of the terms of the agreement, only the essential terms. *See Cohen v. McCutchin*, 565 S.W.2d 230, 232 (Tex. 1978). Which terms are essential to the agreement is determined on a case-by-case basis. *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 73–74 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

7

**C.     Analysis**

The Bujnochs' claim for breach of contract concerns Copano's alleged promise to purchase a second easement on their properties at the prices contemplated in the email exchanges between James and Schwartz.  Copano's summary judgment motion raised the statute of frauds as an affirmative defense to enforcement of this agreement, and the trial court granted summary judgment dismissing the Bujnochs' claim.  Thus, the summary judgment may be affirmed on appeal only if Copano conclusively established that the statute of frauds bars enforcement of the agreement.

As we understand it, Copano's motion for summary judgment sought to conclusively establish its statute-of-frauds defense on the following grounds:  (1) the emails may not be read together to make out a written memorandum, and no single email contained the essential terms of the agreement; (2) even if the emails may be read together, they omitted essential terms of the agreement, such as (i) the identity of the parties, and (ii) a description of the easement; (3) the emails contained "futuristic" language; and (4) the parties did not agree to transact business by electronic means.  We address each ground separately below.

**1.     The emails may not be read together to make out a written memorandum, and no single email contains the essential terms of the agreement.**

Copano argued that the emails exchanged between James and Schwartz may not be read together in determining whether a written memorandum contains the essential terms of the agreement to purchase a second easement on the Bujnochs' properties.  The Bujnochs appear to concede that no single email includes all the essential terms of the agreement, so the emails must be read together in order to satisfy the statute of frauds.  The Bujnochs maintain, however, that a written memorandum may consist of multiple

8

signed writings that relate to the same transaction. We agree. *See Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (observing that it is "well-established law that instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times"); *see also City of Houston v. Williams*, 353 S.W.3d 128, 137 (Tex. 2011) (recognizing that the statute of frauds allows multiple documents to be read together); *Dittman v. Cerone*, No. 13-11-00196-CV, 2013 WL 5970356 *4 (Tex. App.—Corpus Christi Oct. 31, 2013, no pet.) (mem. op.) (construing three emails together to determine whether the emails contain the essential terms of an agreement subject to the statute of frauds). There is no dispute here that the emails related to the same transaction—i.e., the purchase of a second easement on the Bujnochs' properties.

Nevertheless, Copano maintains that the emails may not be read together because they do not *expressly* refer to one another. However, though express reference is required when an unsigned writing is sought to be incorporated by reference in a written memorandum, express reference is not required when the writings are signed by the party to be charged. *Compare Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex. 1968) (stating the general rule that an unsigned writing may be incorporated by reference to a signed writing only if the signed writing expressly refers to the unsigned writing)[7] *with Fort Worth*, 22 S.W.3d at 840 (observing that instruments executed by the parties may be read together even if the instruments do not expressly refer to each other) *and Adams*, 151

---

[7] *See also Alattar v. Ganim*, 355 S.W.3d 1, 6 (Tex. App.—Houston [14th Dist.] 2010), *review granted, judgment rev'd*, No. 10-0592, 2011 WL 2517140 (Tex. June 24, 2011), *opinion withdrawn* (Mar. 30, 2012); *Overton v. Bengel*, 139 S.W.3d 754, 758 (Tex. App.—Texarkana 2004, no pet.); *Cavazos v. Cavazos*, 941 S.W.2d 211, 214 (Tex. App.—Corpus Christi 1996, writ denied); *Crowder v. Tri-C Res., Inc.*, 821 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1991, no writ).

254 S.W.2d at 80 (concluding that "a valid memorandum of the contract may consist of letters and telegrams *signed by the party to be charged* and addressed to . . . the other party to the contract") (emphasis added). Contrary to Copano's position, no express reference was required if James signed the emails.[8] Thus, the emails may be read together if James signed them.

In Texas, electronic signatures are legally effective to bind parties. *See* TEX. BUS. & COM. CODE ANN. § 322.007 (West, Westlaw through 2017 1st C.S.) (providing that a "signature may not be denied legal effect or enforceability solely because it is in electronic form"). James is considered to have signed the emails if they included an electronic symbol evincing his "intent to sign" them. *Id.* § 322.002(8) (West, Westlaw through 2017 1st C.S.).

The issue concerning when an email communication qualifies as an electronic signature has generated significant discussion and diverging viewpoints among the courts, and the Texas Supreme Court has yet to directly address the issue. *See Williamson v. Bank of New York Mellon*, 947 F. Supp. 2d 704, 709 (N.D. Tex. 2013) (venturing an "*Erie* guess" that the Texas Supreme Court would consider typed names and signature blocks in emails as signatures). We will draw on other Texas intermediate court decisions for guidance.

In *Cunningham*, the Fort Worth court considered whether a signature block appearing at the bottom of the sender's email message constituted an electronic

---

[8] The relevant emails in this case are not part of an email thread that displays a running list of succeeding replies starting with the original email message. Because we are not reviewing an email thread, we express no opinion regarding whether messages contained within such a thread can be said to expressly refer to each other so as to dispense with the requirement that each individual email message in the thread be signed by the party to be charged.

10

signature that could bind the sender to a Rule 11 agreement. *Cunningham v. Zurich American Ins. Co.* 352 S.W.3d 519, 530 (Tex. App.—Fort Worth 2011, pet. denied). The Fort Worth court held that the signature block, standing alone, did not evidence the person's intent to sign the email, and therefore, it was not a signature that could validate the Rule 11 agreement. *Id.* The court reasoned that the signature block was not a signature because no evidence was offered to show that the signature block was not automatically generated, nothing in the email itself indicated an intent for the signature block to operate as a signature, and there was no evidence that the parties intended to conduct the transaction via electronic means. *See id.*

In *Khoury*, the Houston court expressly declined to follow *Cunningham*, noting that the Fort Worth court "offered no explanation for why physically typing in a signature line at the time of drafting the e-mail should be required for a 'signature block' to constitute a signature." *Khoury v. Tomlinson*, 518 S.W.3d 568, 575 (Tex. App.—Houston [1st Dist.] 2017, no pet.). Instead, the Houston court holds that a person's name or email address appearing in the "from" field of an email constitutes a signature for purposes of the statute of frauds, even when the sender's name does not appear anywhere in the body of the email. *See id.*; *see also Le Norman Operating LLC v. Chalker Energy Partners III*, LLC, No. 01-15-01099-CV, — S.W.3d —, 2017 WL 4366265, at *16 (Tex. App.—Houston [1st Dist.] Oct. 3, 2017, no pet. h.) (same).

This Court has not expressly adopted or rejected *Cunningham*'s holding that signature blocks alone fail to evidence the sender's intent to sign an email. However, in *Nanda*, we relied on *Cunningham* to find that a person did not evince an intent to sign an email that stated "Ok, I'll get you the paperwork shortly" where neither the sender's name

11

nor his signature block appeared below this message. *Nanda v. Huinker*, No. 13-13-00615-CV, 2015 WL 5634367, at *5 n.4 (Tex. App.—Corpus Christi Sept. 24, 2015, no pet.) (mem. op.).[9]

Copano asks us to follow *Cunningham* and conclude that James did not evidence an intent to sign the relevant emails in this case. To the extent we followed *Cunningham* in *Nanda*,[10] we conclude that the facts in both cases are distinguishable from the facts in this case. Here, the record shows that James manually typed his name at the end of each email, which was sometimes followed by his signature block. Furthermore, James testified at a deposition that he sometimes negotiated agreements through email and that Copano would honor such agreements. Although no evidence shows that the signature block included in James's emails was not automatically generated, the manual typing of his name provides some evidence of his intent to sign the emails. Moreover, unlike *Cunningham*, James's deposition testimony provides additional evidence that the parties intended to conduct the transaction in this case via electronic means. *Cunningham*, 352 S.W.3d at 530. We conclude that, at a minimum, a fact issue exists regarding whether James evinced an intent to sign the emails that the Bujnochs rely on to comply with the statute of frauds. *See Le Norman Operating LLC*, 2017 WL 4366265, at *16. Accordingly, Copano was not entitled to summary judgment on the basis that the emails could not be read together or that no single email contained all the essential terms of the agreement.

We now consider Copano's next summary judgment argument.

---

[9] *See In re Rhee*, 481 B.R. 880, 895 (Bankr. S.D. Tex. 2012) (concluding that email was not signed when neither the sender's signature block nor typed name appeared in the email).

[10] *See Nanda v. Huinker*, No. 13-13-00615-CV, 2015 WL 5634367, at *5 n.4 (Tex. App.—Corpus Christi Sept. 24, 2015, no pet.) (mem. op.).

**2. Even if the emails may be read together, they omit essential terms of the agreement.**

Copano next argued that reading the emails together still did not show compliance with the statute of frauds because the emails omitted essential terms of the agreement. "[E]ssential terms are those that parties would reasonably regard as 'vitally important ingredient[s]' of their bargain." *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016). Copano and the Bujnochs apparently agree that terms essential to this agreement included: (1) the identity of the parties to the agreement; (2) an adequate description of the second easement; and (3) the price to be paid for the easement. Copano concedes that the emails include the price for the easement ($70 and $88 per foot). Consequently, the focus of Copano's motion for summary judgment was on the first two elements, which we address separately below.

**i. Parties to the Agreement**

The identity of the parties to the agreement is an essential element of any agreement. *See Cohen v. McCutchin*, 554 S.W.2d 844, 848 (Tex. Civ. App.—Waco 1977), *aff'd*, 565 S.W.2d 230 (Tex. 1978); *see also Grafton v. Cummings*, 99 U.S. 100, 106 (1878) (observing that "an essential element of a contract [subject to the statute of frauds is] that [the writing] shall contain within itself a description of the . . . [seller and the buyer]").

Copano asserted in its summary judgment motion that the emails failed to identify the Bunjochs as the sellers of the second easement with sufficient specificity to satisfy the statute of frauds.[11] However, as the Bujnochs point out, Copano's argument fails with

---

[11] There is no dispute that the emails identified Copano as the buyer of the second easement.

13

respect to at least one appellant—Transportation Equipment, Inc.—because that landowner was specifically identified in James's February 12, 2013 email.

Nevertheless, Copano maintained in its motion for summary judgment that the other landowners in the emails were identified only as Schwartz's "clients." According to Copano, such a vague reference was insufficient because parol evidence would be required to prove that the landowners identified as Schwartz's clients were the Bujnochs. We disagree.

The Texas Supreme Court has observed that, although the essential elements of a contract may never be supplied by parol evidence, "details which merely explain or clarify [an] essential term[] appearing in the instrument may ordinarily be shown by parol [evidence]." *Wilson v. Fisher*, 144 Tex. 53, 56, 188 S.W.2d 150, 152 (1945). "Thus, resort[ing] to [parol] evidence . . . is not for the purpose of supplying [an essential term], but only for the purpose of identifying it with reasonable certainty from the data in the memorandum." *Id.* Here, the emails supply the relevant essential term—i.e., the selling party—by describing them as Schwartz's clients. As such, the sellers were identified by reference to their attorney-client relationship with Schwartz. Thus, any parol evidence offered in this case would not be used for the purposes of identifying a party to the agreement but only for the purpose of clarifying or explaining who Schwartz's clients are based on the data provided in the emails. *See id*; *see also See also Long v. RIM Operating, Inc.*, 345 S.W.3d 79, 88 (Tex. App.—Eastland 2011, pet. denied). Therefore, we disagree that parol evidence would be inadmissible to establish the identity of Schwartz's clients.

14

Copano responds that the description is insufficient under *Cohen*, 565 S.W.2d at 232. However, in *Cohen*, the writing completely failed to identify one party (the assignor) to the agreement. *See id.* (holding that the writing failed to satisfy the statute of frauds where it failed to "identify McKnight as the assignor in any way"). Consequently, the party-element of the agreement could only be supplied by parol evidence, which the statute of frauds prohibits. Here, the emails identify both parties to the agreement by providing that "Schwartz's clients" (sellers) will grant a second easement to "Copano" (buyer). *Cohen* is factually distinguishable on that basis.

We conclude that summary judgment was improper on the basis that the emails omitted the identity of the parties to the agreement.

### ii.     Description of the Easement

No part of the memorandum is more essential than the description of the property to be conveyed. *Crowder v. Tri-C Res., Inc.*, 821 S.W.2d 393, 396 (Tex. App.—Houston [1st Dist.] 1991, no writ) (citing *Smith v. Griffin*, 131 Tex. 509, 116 S.W.2d 1064, 1066 (1938)). In order for a conveyance to meet the requirements of the statute of frauds, "the property description must furnish within itself or by reference to another existing writing the means or data to identify the particular land with reasonable certainty." *Reiland v. Patrick Thomas Props., Inc.*, 213 S.W.3d 431, 437 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Pick*, 659 S.W.2d at 637). The "purpose of a description in a written conveyance is not to identify the land, but to afford a means of identification." *Id.* (citing *Jones v. Kelley*, 614 S.W.2d 95, 99–100 (Tex. 1981)). "If enough appears in the description so that a person familiar with the area can locate the premises with reasonable certainty, it is sufficient to satisfy the statute of frauds." *Id.* (citing *Gates v. Asher*, 154

15

Tex. 538, 280 S.W.2d 247, 248–49 (1955)). "Words of description are given a liberal construction in order that a conveyance may be upheld." *Gates*, 280 S.W.2d at 248; *Siegert v. Seneca Res. Corp.*, 28 S.W.3d 680, 683 (Tex. App.—Corpus Christi 2000, no pet.). The purpose of a description "is to avoid instances in which a court enforces the sale of a property that the seller did not intend to convey, or that the buyer did not intend to purchase, based on an unclear contract. This level of certainty does not require that the agreement identify the property to be conveyed by metes and bounds." *Coe v. Chesapeake Expl., LLC*, 695 F.3d 311, 318 (5th Cir. 2012) (citing *Tex. Builders v. Keller*, 928 S.W.2d 479, 481 (Tex. 1996)). Extrinsic evidence may not be used to supply the description of the property, but it may be used "for the purpose of identifying [the property] with reasonable certainty from the data in the [contract]." *Wilson*, 188 S.W.2d at 152.

The test is satisfied in this case. The emails explain that the second easement would:

- be "an additional 20 feet" wide;

- be "contiguous to the first easement"; and

- lay "generally on the North side" of the existing easement.

The word "contiguous" is especially important, since it limits the location of the second easement to a particular place—i.e., right next to the existing easement. Although this description is neither mathematically certain nor described in metes and bounds, the language used furnishes the "means or data" by which the land may be identified with reasonable certainty. *Morrow v. Shotwell*, 477 S.W.2d 538, 539 (Tex.1972). It describes the "size, shape, and boundaries" of the property to be conveyed. *Reiland*, 213 S.W.3d at 437 (citing *Morrow*, 477 S.W.2d at 539). It does this, in part, by reference to other

16

writings already in existence—i.e., the original easements. That is a typical method of describing property to be conveyed. *See AIC Mgmt. v. Crews*, 246 S.W.3d 640, 648 (Tex. 2008) (referring to HCAD records); *Hahn v. Love,* 394 S.W.3d 14, 26-27 (Tex. App.—Houston [1st Dist.] 2012, pet. denied) (same); *Dixon v. Amoco Prod. Co.*, 150 S.W.3d 191, 194-95 (Tex. App.—Tyler 2004, pet. denied) (referring to recorded instruments in Official Records of Upshur County).

In *BSG-Spencer*, the First Court of Appeals recently held that similar language describing an easement was sufficient to satisfy the statute of frauds. *BSG-Spencer Highway Joint Venture, G.P. v. Muniba Enters.*, Inc., No. 01-15-01109-CV, 2017 WL 3261365, at *7–8 (Tex. App.—Houston [1st Dist.] Aug. 1, 2017, no pet. h.) (mem. op.). In that case, the relevant contract granted an easement "for ingress and egress by vehicular and pedestrian traffic, upon, over and across those portions of Parcel 2 which are from time to time developed for ingress and egress for the purpose of providing uninterrupted access from Parcel 1 to [street] and [highway]." *Id.* at *6. The court of appeals concluded that this description satisfied the statute of frauds. Two factors supported this conclusion: (1) a site map delineating the width and location of the start and end of the easement, and (2) testimony on the historical usage of the easement. *Id.* at *7.

The property description in this case is similar to the one in *BSG-Spencer*. Because there was already an existing easement on the Bujnochs' properties, describing the new easement as "an additional 20 feet wide" and "contiguous to the first easement" sufficiently described the location of the new easement. Furthermore, the December 2012 map depicted the proposed easement "contiguous to" the existing easement. Here,

17

as in *BSG-Spencer*, the depiction and map, in conjunction with the existing easement, provide a sufficient description of the easement. *See id.*

### iii.    Summary

We conclude that summary judgment for Copano was improper on the basis that the emails omitted essential terms, such as the identity of the parties and a description of the easement. We now consider Copano's next summary judgment argument.

### 3.    The emails contain "futuristic language"

Copano argued that the emails did not satisfy the statute of frauds because they contemplated an agreement to be executed in the future. This Court's decision in *Dittman v. Cerone* is instructive. 2013 WL 5970356 at *3. Although language in the emails in that case could be characterized as contemplating an agreement to be executed in the future, the fact that the formal agreement had yet to be executed did not preclude the writings from satisfying the statute of frauds because the written memorandum (the emails) already contained the essential elements of the contract: the interest to be conveyed, the price, and consideration. *Id.* (email from sellers stating that they were "working on getting the following agreements ready" and wished to "get these executed as soon as possible").

Here, as we held *supra* section II(C)(2), the emails contained the essential terms of the agreement, so the statute of frauds tolerated nonessential futuristic language. Therefore, summary judgment was improper on the basis that the emails contained futuristic language.

### 4.    The parties did not agree to transact business electronically

Records, signatures, and contracts in electronic form are legally effective to bind parties who have agreed to transact their business by electronic means. *See* TEX. BUS.

& COM. CODE ANN. § 322.007(a); *see also Cerone*, 2013 WL 5970356 *4 (option contract formed by email communication between the parties).  The parties need not expressly agree to conduct the transaction by electronic means; instead, "[w]hether the parties agree[d] to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct."  TEX. BUS. & COM. CODE ANN. § 322.005(b) (West, Westlaw through 2017 1st C.S.); *see Le Norman Operating* LLC, 2017 WL 4366265, at *15.

At his deposition, James admitted that he would sometimes negotiate agreements through email.  He further agreed that Copano would honor the agreements reached by email.  To the extent summary judgment would have been proper on the basis that the parties did not agree to transaction electronically, James's deposition testimony raises a fact issue.  Therefore, Copano was not entitled to summary judgment on the basis that the parties did not agree to transaction electronically.

## 5. Summary

Fact issues preclude summary judgment for Copano as to the Bujnochs' breach-of-contract claim.  Specifically, the emails may be read together to satisfy the statute of frauds' memorandum requirement if James evinced an intent to sign the emails.  If the emails may be read together, they include the essential terms of an agreement sufficient to satisfy the statute of frauds.  The other unresolved fact issue is whether the parties agreed to conduct the transaction herein by electronic means.

We sustain the Bujnochs' first issue.

## III.     TORTIOUS INTERFERENCE

By their second issue, the Bujnochs contend that the trial court erred in dismissing their claim against Kinder Morgan for tortious interference.

To establish their claim for tortious interference, the Bujnochs would have to prove: (1) a valid contract existed between them and Copano; (2) Kinder Morgan willfully and intentionally interfered with that contract; (3) the interference proximately caused the Bujnochs damage; and (4) the Bujnochs suffered actual damage or loss. *See Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 207 (Tex. 2002).

## A.     Pertinent Facts

In its motion for summary judgment, Kinder Morgan argued there was no evidence to support the first two elements of tortious interference above—i.e., the valid contract element and the interference element. As to the first element, Kinder Morgan argued that any agreement between the Bujnochs and Copano was not enforceable under the statute of frauds, and therefore, no valid contract existed. As to the second element, Kinder Morgan argued that, even if a valid contract existed, there was no evidence that it interfered with the contract.

In their response to Kinder Morgan's motion, the Bujnochs acknowledged that the motion tested the evidence to support the first two elements, but asserted that summary judgment was improper on both grounds. With respect to the first element, the Bujnochs responded that there was a valid contract that complied with the statute of frauds, and that, in any event, the unenforceability of a contract is no defense to a claim for tortious interference. *See Clements v. Withers*, 437 S.W.2d 818, 821 (Tex. 1969). With respect to the second element, the Bujnochs responded that they had not been afforded enough

20

time to conduct discovery to supply evidence of the second element—i.e., to show that Kinder Morgan interfered with the contract. However, the record shows that the Bujnochs did not file an affidavit or motion for continuance explaining what additional discovery needed to be conducted, or how long they would need to complete it. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996) (holding that "[w]hen a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance").

After considering Kinder Morgan's motion for summary judgment, as well as the Bujnochs' response thereto, the trial court granted Kinder Morgan's motion without specifying the basis for its ruling.

**B. Discussion**

"When, as here, the trial court does not specify the basis for its ruling, it is the appellant's burden on appeal to show that each of the independent grounds asserted in support of summary judgment is insufficient to support the judgment." *Humane Soc. of Dallas v. Dallas Morning News, L.P.*, 180 S.W.3d 921, 923 (Tex. App.—Dallas 2005, no pet.). If the appellant does not challenge one of the grounds for summary judgment, the judgment may be affirmed on that ground alone. *Id.*

On appeal, the Bujnochs assert that summary judgment was improper only as to the first element—i.e., the valid-contract element. However, the Bujnochs do not challenge the summary judgment as to the second element—i.e., the interference element. The summary judgment may have been rendered, properly or improperly, on this unchallenged ground. *See id.*

21

Furthermore, the Bujnochs do not complain on appeal that summary judgment as to the second element was improper because not enough discovery had been conducted. Whether a nonmovant has had adequate time for discovery is case specific. *Robertson v. Sw. Bell Yellow Pages, Inc.*, 190 S.W.3d 899, 902 (Tex. App.—Dallas 2006, no pet.) (citing *Restaurant Teams Int'l, Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 339 (Tex. App.—Dallas 2002, no pet.)). To determine whether an adequate time for discovery has passed, the court examines multiple factors including: (1) the nature of the case; (2) the nature of evidence necessary to controvert the no-evidence motion; (3) the length of time the case was active; (4) the amount of time the no-evidence motion was on file; (5) whether the movant had requested stricter deadlines for discovery; (6) the amount of discovery already taken place; and (7) whether the discovery deadlines in place were specific or vague. *See id.* The Bujnochs have made no effort to discuss any of the relevant factors. They do not state how much time they had for discovery, what discovery was completed, what further discovery was needed, or why the time allowed for discovery was not adequate. We will not make the Bujnochs' argument for them. *See $4,310 in U.S. Currency v. State*, 133 S.W.3d 828, 829 (Tex. App.—Dallas 2004, no pet.).

We conclude that the Bujnochs have failed to meet their appellate burden to challenge both grounds on which the summary judgment could have been granted. *See* TEX. R. APP. P. 38.1(i). We overrule the Bujnochs' second issue.

## IV. CONCLUSION

We reverse the trial court's summary judgment as to the Bujnochs' claim for breach of contract and remand for further proceedings. However, we affirm the trial court's summary judgment as to the Bujnochs' claim for tortious interference.

22

**/s/ Rogelio Valdez**
ROGELIO VALDEZ
Chief Justice

Delivered and filed the
28th day of December, 2017.